# THE BOARD OF COUNTY SCHOOL COMMIS-SIONERS OF WORCESTER COUNTY *vs.* PHILLIPS L. GOLDSBOROUGH, COMPTROLLER, &C.

*Civil Officers—County School Commissioners—Governor not Empowered to Remove—Constitutional Law.*

Civil officers, within the meaning of the Constitution, are governmental agents and natural persons, in whom is vested a part of the State's sovereignty to be exercised by them individually for the public good.

When a governmental function is exercised by a public corporation created for that purpose, and the members of such corporation are intrusted with no authority to act as individuals, but only through and in the name of the corporation, such persons are not civil officers of the State within the purview of Constitution, Art. 2, sec. 15, relating to removal by the governor of civil officers.

Under Code, Art. 77, the management of the public schools in each county is confided to a Board of School Commissioners, which is declared to be a body corporate. No power is conferred upon any individual commissioner or member of the board, but all their acts are those of the board or a majority of its members. The commissioners are not required to take an oath of office. *Held*, that the school commissioners are merely members of a public corporation discharging duties imposed upon the board in the name of the corporation and do not act as individual civil officers.

Code, Art. 77, sec. 19, provides that the school commissioners for each county, who are appointed by the Governor with the consent of the Senate, shall constitute a body corporate under the name of the Board of School Commissioners, and all their duties must be exercised by the board as a corporate entity. Sec. 25 provides that in case of the death, resignation, &c., of a school commissioner during a recess of the Legislature, the Governor shall have power to appoint to fill the vacancy for the unexpired term ; and "in case of inefficiency, refusal to act, or breach of trust, the board may by a vote of a majority of its members declare the office vacant." Constitution, Art. 2, sec. 15, provides that the Governor may remove for incompetency or misconduct, all civil officers who receive appointment from the Executive for a term of years. *Held*,

1st. That a county school commissioner is not a civil officer within the meaning of this clause of the Constitution, and that the Governor has no power to remove such commissioner from office for incompetency or misconduct.

2nd. That where the Governor, after due notice, removed a county school commissioner for incompetency, and appointed another in his place, the board consisting of three members, then an officer elected by such appointee and one member of the old board is not authorized to demand payment from the Comptroller, of the funds appropriated to the schools of that county.

Appeal from an order of the Circuit for Anne Arundel County (REVELL and JONES, JJ.), overruling a demurrer to defendant's answer to petition for *mandamus* and dismissing the petition.

· The·cause was argued before McSHERRY, C. J., FOWLER, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*Edgar H. Gans* and *W. Calvin Chesnut* (with whom was *Adlai P. Barnes* on the brief), for the appellants.

· *I. The Procedure.*—As the Board of County School Commissioners is constituted a body politic and corporate by section 19 of Article 77 of the Code P. G. L., the petition was properly filed in the corporate name. *Jones* v. *Keating*, 55 Md. 145 ; *School Com. of Wicomico County* v. *School Com. of Worcester County*, 35 Md. 201 ; *O'Neal* v. *School Com.*, 27 Md. 227. As the secretary of the board is a necessary party to the drawing of the draft on the treasurer, and as the money is to be paid to him, it has been thought proper, though perhaps not necessary, to join him as a co-petitioner. As under sections 101, 102 and 103 of Article 77, P. G. L., the act of the Comptroller here sought to be enforced is purely a ministerial one, *mandamus* is the proper remedy. *Allegany County School, etc.*, v. *Maffit*, 22 Md. 121, 134 ; *Leonard* v. *Wiseman*, 31 Md. 201 ; *McPherson* v. *Leonard*, 29 Md. 377 ; *Wailes* v. *Smith*, 76 Md. 476.

*II. The Power of Removal by the Governor.*—Has the Governor of this State the power to remove, for incompe-

tency and misconduct in office, a member of a County Board of School Commissioners? This is the principal, substantial and important question involved in this case. On the part of the appellants, it is contended that he has and that the power is given to him by Article II, section 15 of the Constitution of the State.

The contention of the defendant, as set forth in his answer, is that a member of a Board of County School Commissioners " can only be removed by the vote of a majority of the members of the Board of School Commissioners * * * in the manner prescribed by section 25 of Article 77 of the Code of Public General Laws of this State, as re-enacted by the Act of 1892, chapter 341."

A careful reading of sec. 15 of Art. 2 of the Constitution, shows that to justify a removal thereunder, three elements must exist. (1). *The removal must be for incompetency or misconduct.* (2). *The person removed must have received appointment from the Executive for a term of years.* (3). *The person removed must have been a civil officer.* The appellants contend that the removal of Quillin in this case gratifies all three of these requirements. Considering them in their order :

(1). Quillin was removed for incompetency and misconduct. This is admitted in the answer of defendant. The mode of procedure upon the trial of charges of incompetency and misconduct is provided for by sections 12 and 13 of Article 41 of the Code of Public General Laws. That this mode was followed is alleged in a general way in the petition and admitted by the answer.

(2). Quillin, as a member of the county school board, received appointment from the Executive for a term of years. As has been seen, members of the county school boards are now appointed by the Governor by and with the consent of the Senate. And the term " Executive," as employed in section 15 of Article 2 of the Constitution, has been construed to include appointments by the Governor' with the co-operation of the Senate. *Harman* v. *Harwood,* 58 Md. 1.

Of course an appointment for six years, or for any definite time, is for a term of years within the meaning of Article 2, section 15 of the Constitution. *Townsend* v. *Kurtz*, 83 Md. 331, 342, 343 ; *Cantwell* v. *Owens*, 14 Md. 215.

(3). A member of a Board of County School Commissioners is a *civil officer.* The term " civil," as used in Article 2, section 15 of the Constitution, is evidently contrasted with military, as used in the same section. *Cantwell* v. *Owens*, 14 Md. 215. In general, the phrase civil officer embraces all who are engaged in the service of government distinct from those engaged in the military or naval service. *Ency. Law*, vol. 19, 392 ; *And. Law Dict.*, title, " Officers ;" *Black's Law Dict.*, title, " Civil Officers ;" 1 *Story, Const.*, sec. 792 ; *Mechem, Pub. Off.*, sec. 24 ; *Crawford* v. *Dunbar*, 52 Cal. 36 ; *State* v. *Valle*, 41 Mo. 29.

Thus, members of municipal boards, like a board of public works, are public officers. *People* v. *Hurlbut*, 24 Mich. 59. And a member of a Board of Water Commissioners of St. Louis is a civil officer. *State* v. *Valle*, 41 Mo. 29, 31. And a school superintendent of a county is a "civil officer " under the Constitution of California. *Crawford* v. *Dunbar*, 52 Cal. 36. And school directors, treasurers and trustees are public officers. *Mechem, Pub. Off.*, sec. 55 ; *Commonwealth* v. *Morissey*, 86 Pa. St. 416 ; *Ogden* v. *Raymond*, 22 Conn. 379 ; *Sanborn* v. *Neal*, 4 Minn. 126 ; *McCoyer* v. *Cortice*, 9 Wend. (N. Y.) 17.

It will thus be seen that the removal of Quillin gratifies all the requisites of Article 2, section 15 of the Constitution. But it may be suggested that this section has reference only to those civil officers provided for in the Constitution itself, or, in other words, that the section is not prospective and does not give to the Governor the power to remove officers created by appointment under Acts of the Legislature, passed subsequent to the Constitution. This suggestion, if made, is at once answered by the case of *Harman* v. *Harwood*, 58 Md. 1, in which the power of the Governor, under Article 2, section 15, to remove a register

of voters appointed by the Governor and Senate under the
Act of 1874, chapter 490, was distinctly affirmed. See also
the similar case of *Lane* v. *Commonwealth*, 103 Pa. St. 481.

We are now brought to a consideration of the effect of
section 25 of Article 37 of the Code of P. G. L., as
amended by the Act of 1892, chapter 341. Can this sec-
tion be construed or allowed to nullify or modify the Gov-
ernor's constitutional power of removal? Conceding, for
the sake of the argument, that section 25 of Article 77 is
inconsistent with Article 2, section 15, of the Constitution,
the proposition of the appellants is, very broadly, that
whenever an Act of Assembly vests in the Governor the
power of appointment to an office created by said Act, for
a term of years, then the power of removal given the Gov-
ernor by section 15 of Article 2 of the Constitution attaches;
and no provision in said act in reference to the power of re-
moval, even an express denial thereof to the Governor, can
infringe upon or interfere in any way with the power given
by section 15 of Article 2. The wisdom of and necessity
for this power in the Governor is sustained by many con-
siderations of public policy, and especially by the provisions
of section 9 of Article 2 of the Constitution, whereby it is
enjoined upon the Governor that he shall take care that the
laws are faithfully executed. It is competent for the Legis-
lature in creating a new office to be filled by appointment
of the Governor to enlarge his powers of removal of ap-
pointees thereto, but not to detract from said power given
him by the Constitution. *Townsend* v. *Kurtz*, 83 Md. 321.

The construction sought to be placed upon the last clause
of Article 2, section 15 of the Constitution, making it inop-
erative in this case, on account of the existence of a method
of removal provided by section 25 of Article 77, P. G. L.,
could only be maintained by adding an additional phrase to
section 15, so that it would read "and may remove for in-
competency or misconduct, all civil officers who received
appointment from the Executive for a term of years, *unless
a different mode of removal be prescribed by the law creating*

*the office.*   By reference to section 10 of Article 2 of the Constitution, it will be seen that a similar phrase was included in said section upon the power of appointment by the Governor, and if the framers of the Constitution had desired the same limitation put upon the power of removal, *it would certainly have been added.*   As it is, section 15 is plain as it stands, and cannot be changed in meaning by the addition of words not used, but rather, apparently, expressly and intentionally omitted.   *Cantwell* v. *Owens*, 14 Md. 215.

But is section 25 of Article 77, P. G. L., necessarily inconsistent with Art. 2, section 15 of the Constitution? The appellants submit that it is not, but that both methods of removal can very well stand.  They provide different grounds for the removal.   Under section 15 the removal must be for incompetency or misconduct; under section 25 of Article 77 the grounds are "in case of inefficiency, refusal to act, or breach of trust."   It may very well be that the Legislature thought it well to provide a double remedy.   It may have thought the power of removal by the majority would be more speedy and efficacious in certain cases than the constitutional power given the Governor.   There is nothing anomalous in law in there being two methods of removal of an officer.   *Lutz's case*, 8 Pa. Co. Ct. Rep. 133 ; *Manker* v. *Faulhaber*, 94 Mo. 430.

In *Ash* v. *McVey*, 85 Md. 119, this Court decided that the power of appointment to fill a vacancy for the unexpired term, when the Senate is not in session, bestowed on the Governor alone by the first part of section 25 of Article 77, did not conflict with Article 2, section 11 of the Constitution, which provides for recess appointments by the Governor.

*John H. Handy*, for the appellee.

McSHERRY, C. J., delivered the opinion of the Court.

The ultimate question for decision on the record before us is this : Has the Governor, under *sec. 15, Art. 2* of the

State Constitution, the power to remove a county school commissioner from office for incompetency or misconduct ? That question comes up in the following way : Laban T. Quillin, one of the three school commissioners of Worcester County, after due notice and opportunity to be heard was removed by the Governor on the sixteenth of August, eighteen hundred and ninety-nine. On the same day the Governor appointed Harry P. Dale in place of Quillin. On the next day Dale qualified and a meeting of the school board was held. Quillin attended the meeting and refused to recognize the validity of his removal by the Executive. Under the statute the board consists of three members. Edgar W. McMaster, who had in August, 1898, been elected president of the board, and Asbury C. Riley were, with Quillin, the members of the board when the last named of the three was removed. At the meeting on August the seventeenth Riley and Dale, acting together, deposed Mc-Master as president, and elected Riley in his place. They continued in office Straughn, who had been elected secretary, treasurer and examiner the preceding year. McMaster recognized Quillin as a member, and Riley recognized Dale. There were thus two hostile boards, each claiming to be the rightful board and both having the same secretary, treasurer and examiner. In this situation Riley, acting as president, and Straughn, acting as secretary, drew a draft on the Comptroller of the State Treasury for the funds apportioned by him to the school board of Worcester County; but the Comptroller, not recognizing Riley as president, refused to pay the draft. Thereupon a petition was filed in the name of the Board of County School Commissioners against the Comptroller praying that he might by *mandamus* be required to pay the draft. The Comptroller filed an answer, to which the relator demurred. This demurrer was overruled and the petition was dismissed, and hence this appeal.

If the Governor had no authority to remove Quillin, his appointment of Dale in the place of Quillin was a nullity,

and Dale did not by that appointment become a member of the board.  If Dale did not become a member of the board, the deposing of McMaster as president by Riley and Dale was futile and of no effect, and the election of Riley by Dale, and Riley to succeed McMaster as president, was no election at all ; and if Riley was not president then the draft drawn by him as president was a draft that the Comptroller was not bound to pay.  If the Comptroller was not, in law, bound to pay that draft, then a *mandamus* compelling him to pay it cannot be issued.  Thus the controversy reaches back to the inquiry which was stated at the beginning of this opinion.

On the one hand, it is contended that the Governor has under *sec. 15, Art. 2* of the Constitution, the power to re-move a school commissioner.  On the other hand it is main-tained that a school commissioner can only be removed under *sec. 25, Art. 77* of the Code of Public General Laws. Section 15, Art. 2 of the Constitution provides: " The Governor may suspend or arrest any military officer of the State for disobedience of orders or other military offence ; and may remove him in pursuance of the sentence of a court-martial ; and may remove for incompetency or misconduct, all civil officers who received appointment from the Execu-tive for a term of years."    Section 25, Art. 77 of the Code enacts :  " In case of the death of any county school com-missioner, or his resignation, or removal from the county or disqualification from any legal cause during the recess of the General Assembly, the Governor shall have power to appoint a qualified person to fill the vacancy for the unex-pired term; in case of inefficiency, refusal to act or breach of trust, the board may by a vote of a majority of its mem-bers declare the office vacant and give notice to the party concerned.   An appeal may be taken to the State Board of Education, whose decision shall be final, but if no appeal be taken within ten days, the vacancy shall be filled as here-inbefore provided."    This section of the Code provides in terms for the removal of a school commissioner.    It pro-

fesses to deal with that subject ; whilst sec. 15, Art. 2 of the Constitution does not expressly include a school commissioner, and is applicable to him only in the event that he is a '' civil officer '' within the meaning of that phrase as used in that and other sections of the organic law.

The public school system, as it now exists, was framed by the Legislature pursuant to the requirements of Article eight of the State Constitution.    By the statutes at present in force on that subject as embodied in Article seventy-seven of the Code, the School Commissioners are appointed by the Governor with the approval of the Senate, for a term of six years—the beginning of the term being fixed in the month of August following the appointment.    By section nineteen of the Article just named, it is expressly declared that the school commissioners for each county shall be and constitute a body corporate ; and all the property, funds and effects belonging to the public schools of the respective counties are declared to vest in these boards or bodies corporate.    To these boards, to these corporations, and not to the individual school commissioners, is committed the whole management and control of the public schools.  Now, the question is, are these school commissioners '' civil officers '' within the meaning of section 15, Art. 2 of the Constitution ; or are they merely members of public corporations exercising, not personally as civil officers, the duties imposed upon the Boards of School Commissioners, but discharging those duties solely through and in the name of the corporate entity of which, by their appointment, they become members ?    There is a sense in which, if they are officers at all, they may be said to be civil officers, and that is as contradistinguished from military officers ; but still the question recurs, are they civil officers within the meaning of the Constitution when all the provisions of that instrument bearing upon the inquiry are brought together and interpreted, not in the way a statute would be read, but in the way those provisions must have been understood by the people who adopted them.    *Mayor* v. *State,* 15 Md. 376.

If we turn to sec. 13, Art. 2 of the Constitution, we find that the terms of "all civil officers appointed by the Governor and Senate  *  *  *  *  except in cases otherwise provided for in this Constitution, shall commence on the first Monday of May next ensuing their appointment, and continue for two years (unless removed from office)." Now, if the phrase "civil officers" used in sec. 15 is to be understood as meaning the officers which the same phrase employed in sec. 13 applies to ; then if a school commissioner is under sec. 15 a "civil officer," the *Act of 1892, ch. 341,* which created a term of six years to begin in August, is void under sec. 13, because sec. 13 limits the term to two years and fixes its beginning in May.   Thus the alternative is presented of declaring the Act of 1892 unconstitutional, and striking down with it the present organization of the public school system, or of treating the school commissioners as not being civil officers within the meaning of sec. 15.   In the face of such an alternative a strict rather than a liberal construction must be placed on sec. 15.   The term "civil officers" obviously cannot have different meanings in these two closely connected sections of the same Article of the Constitution ; nor can it be construed more rigorously in the one than in the other.   "Where the same language is used in different clauses of the Constitution upon the same or similar subjects it must receive the same construction, unless some particular reason to the contrary can be assigned." *Roberts* v. *Gibson,* 6 H. & J. 116.   No satisfactory reason can be given for assuming that the people who adopted the Constitution as a whole understood that the term "civil officers" was to have a wider signification in the fifteenth than in the thirteenth section.

Originally the school commissioners were under the *Act of 1865, ch. 160,* named by the State Board of Education and their terms, beginning in June, were fixed at four years. Then under the *Act of 1868, ch. 407,* they were elected by the people for a term of two years, commencing in January. Afterwards they were selected by the Judges of the Circuit

Courts and finally the power to appoint them was conferred
upon the Governor.   However chosen, they were clothed
with no power to be exercised by them as individuals.
With the single exception of the authority given to them
to administer an oath in matters pertaining to public schools,
every duty to be performed is imposed, and every power to
be used in respect to the public schools is conferred, not
upon the *persons* appointed commissioners, but upon the
corporate entities of which those persons are merely the
members.   In defining and prescribing the duties imposed
and the powers given, the Code particularly refers not to
the persons called school commissioners but to the " Board
of County School Commissioners."   Thus in *sec. 19, Art.
77*, as amended by the *Act of 1892, ch. 538.*   " The Board
of County School Commissioners is hereby declared to be
a body politic and corporate by the name, style, &c.," and
" by that name shall have perpetual succession, and shall be
capable to sue and be sued, to have a common seal * * *
and *to exercise all the powers and privileges hereby granted
to or vested in them.*"   Sec. 21 gives to the *board* the gen-
eral supervision and control of all schools of the county.
Notably in *secs. 6 and 18*, as re-enacted by the *Act of 1892,
ch. 341*, is the Legislature careful to declare that the power
given is not to the individuals but to the corporation.   The
first of these sections directs the Governor to appoint not
*officers*, but " a *Board* of County School Commissioners for
each county, to be composed " in certain counties " of six
*persons*, and in each of the other counties of three *persons*,
* * * * *.   The member or members of each board
who shall serve two, four and six years respectively, to be
designated by the Governor."   And the eighteenth section
directs that " the Board of County School Commissioners
shall meet for organization on the first Tuesday of August
next succeeding their appointment * * * * *.   The
*board* shall meet once in every school term, and at other
times if necessary for the transaction of business."   The
primary purpose of the Legislature was to create boards—

bodies corporate—and through and by these agencies the business of the school system was designed to be conducted ; and there is not the faintest manifestation of an intention to clothe the *persons* composing those boards with any of the duties or any of the powers of a public officer. It is the *board* that shall meet for the transaction of business, aud the business to be transacted is the business of the body corporate.   The individuals who compose the board are called in the statute. *members* of the board, and in that capacity, and in that capacity alone, are they competent to act at all.   And so on throughout the whole of Article seventy-seven, wherever power is given or duties are prescribed, it is declared that they are given not to commissioners, but to the board—the body politic and corporate. " The members of the board, acting individually and separately, and not as a board convened for the transaction of business, cannot make a contract that will bind them as a corporation."   *Honaker* v. *Board of Education, &c.*, 42 W. Va. 170; s. c., 32 L. R. A. 413.  It is obvious, then, that the individuals who are school commissioners have, as individuals, no authority ; but because they are school commissioners they become members of a board, and that board as a corporate entity exercises the power and performs the duties described in the statute.   Is it then correct to say that the school commissioners are civil officers—the civil officers referred to in *sec. 13* of the Constitution, whose tenure cannot extend beyond two years and whose term must begin in May ?

In the case of *Ash* v. *McVey*, 85 Md. 119, we held that sec. 11, Art. 2 of the Constitution, had no relation to a school commissioner.   That section provides that " in case of any vacancy during the recess of the Senate, in any office which the Governor has power to fill, he shall appoint some suitable person to said office *whose commission shall continue in force until the end of the next session of the Legislature*, or until some other person is appointed to the same office,whichever shall first occur, &c."   Under the *Act of 1892*, fixing

the tenure of school commissioners at six years, but providing that the first appointees should be classified so as to hold for two, four and six years, Governor Brown appointed Mr. Biddle for a term of four years from August, 1892. In December, 1892, Biddle resigned, and the Governor appointed Mr. Ash for the residue of Biddle's term—that is, up to August, 1896. In January, 1896, Governor Lowndes nominated to the Senate, S. G. Bye, to succeed Ash, but the Senate adjourned without acting on the nomination.    In July, 1896—during the recess of the Legislature—the Governor appointed McVey to succeed Ash.    Ash refused to surrender the position to McVey, and the latter applied for a writ of *mandamus*, which the lower Court granted. Upon appeal the order directing the writ to issue was reversed and we held that Ash was entitled to hold, not only for the residue of Biddle's original term of four years, but until his successor should be appointed by the Governor and con-firmed by the Senate.    Now, it is apparent, that no such conclusion could possibly have been reached by this Court had it been supposed that a school commissioner was a civil officer within the meaning of *sec. 13, Art. 2* of the Constitution ; because had that section been applicable, Ash would have had no right to a *four* years' term, ending July 31st, 1896—his appointment by the Governor for such a term would have been unconstitutional.    But we distinctly , said : " We are  *   *   *   *   of opinion that the appellant (Ash) was lawfully appointed school commissioner for a term of office ending July 31, 1896, and until the quali-fication of his successor."    If a school commissioner is an officer—if the position is an office—within section 13, then sec. 11 would have restricted the duration of the commis-sion of Ash to the end of the Legislative Session of 1894, and we could not have held that his term extended to July 31, 1896.    If the position of school commissioner is *not* an office within the meaning of the word " office" in sec. 11, why is it a " civil " office, or why is the incumbent a " civil officer," within secs. 13 and 15 of the same Article of the Constitution ?

Speaking generally, it may be said that "a 'public office' is an agency for the State, and the person whose duty it is to perform this agency is a 'public officer.' This we consider to be the true definition of a 'public officer,' in its original broad sense.   The essence of it is the duty of performing an agency ; .that is, of doing some act or acts, or series of acts, for the State." *State* v. *Stanley*, 66 N. C. 59. Similar definitions might be almost indefinitely multiplied ; but after all it is rather a narrow view to lay down a general definition of the term "public officer," and then to measure by it the meaning of that same term, no matter under what conditions it may be used.   The nature of the duties, the particular method in which they are to be performed, the end to be attained, the depository of the power conferred and the whole surroundings must be all considered when the question as to whether a position is a public office or not is to be solved.   By an Act of Congress, approved April 20, 1836, providing for the establishment of a Territorial Government of Wisconsin, it was enacted that the Governor shall nominate, and by and with the advice of the Legislative Council appoint judges  *  *  sheriffs  *  * "and all civil officers not otherwise provided for."   By an Act of the Legislative Assembly of the Territory adopted in July, 1839, the Governor, with the advice of the council, was empowered to appoint a board of three canal commissioners to hold their office for the term of one year.   They were required to give bond ; they were authorized to administer oaths and to examine witnesses touching any applications for the registry of lands under the provisions of the Act.   They were empowered to make sales of the lands which had been granted by Congress to the Territory for aiding in the opening of a canal between Lake Michigan and Rock River.   Three commissioners were appointed under the Act of 1839.   On January eleventh, 1840, the Legislative Assembly adopted an Act providing that the canal commissioners should be elected annually on joint ballot by the council and House of Representatives.   Under

the organic law authorizing the Governor to appoint all
civil officers—and that organic Act of Congress was as
binding on the Territorial Assembly as a State Constitution
is on the State Legislature—one Noyes was in February
1842, appointed a canal commissioner by the Governor;
but just four days previously one Hatch had been elected
on joint ballot of the assembly to the same position.   The
question was, which of these two appointments was legal.
If the office was a civil office, Noyes, the Governor's ap-
pointee, was entitled under the organic law.   If the office
was not a civil office the assembly had the right to fill it.
The *mandamus* applied for by Noyes to compel Hatch to
surrender the place to him was refused because a canal com-
missioner, with all the powers given to him, was not a civil
officer.   The Court observed :  " It may be inferred that
the term *civil officers* was intended to embrace such offices
as in whom part of the sovereignty or municipal regulations
or general interests of society are vested."   *U. S. ex. rel.
Noyes* v. *Hatch,* 1 Pin. 182.

Civil officers, therefore, are governmental agents—they
are natural persons—in whom a part of the State's sover-
eignty is vested or reposed, to be exercised by the individ-
uals so entrusted with it for the public good.   The power
to act for the State is confided to the person appointed to
act.   It belongs to him upon assuming the office.   He is
clothed with the authority which he exerts, and the official
acts done by him are done as his acts and not as the acts
of a body corporate.   It was said in *Collins* v. *N. Y.,* 3 Hun.
680 :  " Probably the true test to distinguish officers from
simple servants or employes is the obligation to take the
oath prescribed by law."   And in *Bunn* v. *People,* 45 Ill.
397, it was held that commissioners to build a State-house
were not officers, because, amongst other things, there was
" no intention manifested, in the Act itself to establish an
office."   " They are not," the Court went on to say, " re-
quired as they would have been if the law-makers supposed
they were officers, to take an oath to support the Constitu-

tion of the United States or of this State." There is no provision in the whole school law requiring the school commissioners to take an oath of office.

In 1822 the Supreme Judicial Court of Maine was asked by the Governor whether "the office of agent, under the resolve ∙ * * * * authorizing the Governor to appoint one or more agents for the preservation of timber on the public lands and for other purposes, is a civil office of profit under this State, within the meaning of Art. 4, part 3, sec. 10 of the Constitution, so that no senator or representative. of the present Legislature can constitutionally be appointed as agent." The judges replied "that the terms *office* and *officers* used in the Constitution of Maine where it prescribes an oath of office to all legislative, executive and judicial ∙officers, imply a delegation of a portion of the sovereign power to and possession of it by the person filling the office, and that a person clothed by a resolve of the Legislature with no other powers than those of superintending the public lands and performing certain acts concerning them, under the discretionary regulation of the Governor, was not an officer, and therefore was not required to take the oath." 3 *Greenl. R.*, 481. In *Com. ex rel. Reynolds* v. *Bussier*, 5 Serg. & R. 451, in speaking of the Governor's power of appointment under the Constitution of Pennsylvania, CHIEF JUSTICE TILGHMAN said : "It is to be understood that in what I have said I do not mean to include certain officers (so called when that word is taken in its largest sense) of a local, limited or a corporate nature, which have not been supposed to be comprehended in the Governor's power of appointment."∙ And in an earlier case it appeared that Thomas Cooper whilst acting as a commissioner under a statute of Pennsylvania to settle the compensation to claimants to lands in Luzerne County, was appointed president-judge of the Court of Common Pleas, and it was insisted that his acts thereafter as commissioner were void because the Constitution of the State declared that a judge should "not hold any other office of profit under this Constitution." But the

Court, TILGHMAN, CHIEF JUSTICE, held that the office of
commissioner was not within the meaning of the Constitu-
tion. " It was rather the execution of a special commis-
sion than the holding of an office, and this certainly was
the opinion of the Legislature," because, as the Chief Jus-
tice went on to show, the Legislature named the commis-
sioners, a thing it would have had no right to do if the
position had been an office, for under the Constitution the
Governor alone had the authority to appoint to an office."
*Shepherd* v. *Com.*, 1 Serg. & *R.*, 1.

It was manifestly not the purpose of the Legislature to
confer upon the school commissioners, as individuals, the
powers, or to impose upon them, personally, the duties
which in explicit terms, and by the use of exact language,
the General Assembly committed to *boards* that were called
into corporate existence expressly to conduct the school
system. As we have pointed out already there is not con-
ferred upon the members of these boards a single power to
be exercised by them personally, save the right to adminis-
ter an oath in matters relating to the schools. A commis-
sioner can do nothing but that which a majority of the
board orders, and no matter what his individual views or
judgment may dictate he is powerless to put those views or
that judgment in force if he happens to be in the minority.
Alone he can do nothing—he has no power whatever. The
scheme of this legislation was designed to make the man-
agement of the schools impersonal; and in no better way
could that end have been reached than by creating a body
corporate which, and which only was clothed, not only with
the title to the school funds and property, but was invested
with all the authority needed to make the system harmon-
ious and effective. It could not have been contemplated
that the members of the boards were to be independent civil
officers or the Legislature would scarcely have disregarded
sec. 13 of Art. 2 of the Constitution, and made the tenure
six years and fixed the beginning of the term in August.

But, when, superadded to all this, it is remembered that

the county school boards are, themselves, subject, in many respects, to the control of the State Board of Education, which, under *sec. 11, Art. 77 of the Code*, as amended by the *Act of 1898, ch. 221*, has power to enact by-laws for the administration of the public school system and to suspend or remove an examiner elected by the county boards, and which, also, under *sec. 12* has the general care and supervision of the public school interests of the State ; it becomes apparent that the agents or individuals selected to be members of these subordinate local school boards were never intended to be, and do not in fact become civil officers, as that term must have been understood by those who adopted the organic law.

Viewed, then, in the light of all the surroundings, and taking into consideration all the provisions of the Constitution, to which allusion has been made, we hold that a school commissioner is not a civil officer within the meaning of that term as it is used in *secs. 13 and 15* of the organic law, no matter how broadly the same term may have been defined in cases relating to a different state of circumstances. This being so, the Governor had no power to remove Quillin, and necessarily, therefore, he was without authority to appoint Dale in Quillin's place. Dale and Riley had, consequently, no right to depose McMaster ; and the drafts signed by Riley, who was not the president of the board, were drafts which the Comptroller was not obliged to pay, and of course, then, the application for a writ of *mandamus* to compel him to pay them was properly dismissed.

Whether the power of removal given by *sec. 25, Art. 77 of the Code* is as broad as it ought to be, is for the Legislature to decide. If, in the wisdom of the General Assembly, it is thought that the Governor should be clothed with that power, the section can easily be amended so as to confer it.

For the reasons we have assigned the order refusing the writ of *mandamus* and dismissing the petition will be affirmed.

*Order affirmed with costs above and
below.*

(Decided December 9th, 1899).