## OLIVER C. WARFIELD vs. THE COUNTY COMMISSIONERS OF BALTIMORE COUNTY.

### Construction of the Act of 1865, ch. 146.

W. was appointed commissioner by the Act of 1865, ch. 146, to *complete* the restoration of the records and papers destroyed or injured by fire in the office of the clerk of the Circuit Court for Baltimore county, and the sum of $2000 was authorized to be levied by the county commissioners to pay for the same, the period of one year being the time limited, within which the work was to be done. He was to be paid monthly the amount due him, the same not to exceed $1.50 for each paper restored, and in the judgment of the county commissioners not to be more than a proportional part of the whole work agreed to be done. He received for work actually done the sum of $976.50. HELD:

1st. That the intention of the Act is clear, that W., the commissioner therein named, should not act under his commission or hold his office for a longer time than one year, and that the sum to be paid him should not in any event exceed $2000.

2d. That the whole sum of $2000, might be paid him for his services at any time within the year, but *only when* he had, in the manner and by the means provided in the Act, *completed* the restoration of all the burnt papers and records.

3d. That during the rendition of the services under the Act, and within the year, monthly partial payments should be made to him before the work was finished, provided the amount of each of such payments should not exceed $1.50, for each paper restored, and provided also the amount of each of such payments should not in *the judgment* of the county commissioners be more than such proportional part of the $2000, as the work professing to be done when each account was presented, bore to the *whole work* to be done. And that the amount paid him for work actually done was all that he was entitled to receive.

The Act of 1865, ch. 146, is simply a law creating for a limited period a public office, in which the public generally, and the people of Baltimore county especially, were interested, filling it by legislative appointment, which the appointee could accept or not as he chose, or at any time resign, defining the powers and duties of the officer, providing and limiting his compensation, and prescribing the mode of its payment. A law which it was perfectly competent for the Legislature to modify or repeal at any time.

APPEAL from the Circuit Court for Baltimore County.

This is an appeal from the decision of the Circuit Court for Baltimore county, refusing the application of the appellant for a *mandamus* to compel the appellees to pay him a sum of money, the balance of salary, which he claimed was due him as commissioner under the Act of 1865, ch. 146, which was "an Act to provide for the completion of the restoration of the records and papers, destroyed or injured by fire, in the office of the clerk of the Circuit Court for Baltimore county." In July, 1861, a fire occurred in the office of the clerk of the Circuit Court for Baltimore county, by which many valuable records and papers were destroyed or injured. The Legislature at its first session thereafter, by the Act of 1862, ch. 281, made provision for the restoration of these records. Three commissioners were appointed with power to appoint a clerk, and two hundred days were allowed for the completion of the work. The records not having been restored under this law, when the Legislature met again in 1864, a new law was framed, being the Act of 1864, ch. 138, by which the number of commissioners was reduced from three to one; and three hundred days were allowed to complete the work. When the Legislature met in 1865, it was found that the records had not yet been restored, notwithstanding the time already consumed, and the large amount of money expended in paying the *per diem* of commissioners and clerks. Under these circumstances the Legislature passed the Act of 1865, ch. 146, the object being to *complete* the restoration of the records and papers which had been destroyed or injured. To insure this result, a very material change was made in the mode prescribed for compensating the commissioner. Under the former laws, the commissioners had been allowed a "*per diem.*" The compensation did not depend upon the amount of labor performed, but only upon the time consumed. To remedy this, the Act of 1865, ch. 146, provided that the cost to the county for completing the work, was not to exceed $2000; to earn which, the commissioner was limited in time

to one year. He was to be paid monthly for his services, at at a rate not to exceed $1.50, for each paper, restored and recorded; and provided the same was not in the judgment of the appellees, more than a proportional part of the whole work agreed to be done by the appellant. The appellant duly qualified as commissioner, entered on the performance of his duties and continued therein for one year; at the end of which time he was interrupted by John H. Longnecker, clerk of the Circuit Court for the county, who resumed the control and custody of the records and books. During the year the appellant acted as commissioner, he restored and recorded six hundred and fifty-one papers, and he was paid therefor by the appellees, the sum of $976.50, being at the rate of $1.50, for each paper restored. The payments were made to him from time to time upon his accounts, as they were presented, according to the requirements of the seventeenth section of the Act. The appellant considered that inasmuch as he had continued to act as commissioner for one year, he was entitled to the whole $2000, whether he completed the work or not; and he sought to compel the payment of the balance of the same, by the appellees, through the instrumentality of the writ of *mandamus.*

The cause was argued before BARTOL, C. J., NELSON, STEWART, BRENT, GRASON and MILLER, J.

*Arthur Geo. Brown* and *George Wm. Brown,* for the appellant, contended:

That the absolute and complete restoration of all the burnt papers, in their original integrity, within the period of one year, was a manifest impossibility, and could not have been intended by the Legislature. That inasmuch as the appellant gave his services as "commissioner," as indicated in the Act of Assembly, he is entitled to the salary of $2000, for the services so rendered. And that a reasonable and true construction of the Act, will sustain the claim of the appellant.

*Watchman & Bratt vs. Crook, et al.,* 5 G. & J., 239. "The intention and meaning of the Legislature are to be collected from the law itself, and they are not to be restrained by anything in the preamble." *Laidler vs. Young's Lessee,* 2 H. & J., 69; *Mayor, &c., of Baltimore vs. Moore & Johnson,* 6 H. & J., 382; *Hays vs. Richardson,* 1 G. & J., 366; *Lucas, et al., vs. McBlair, et al.,* 12 G. & J., 1; *Smith's Commentaries on Stat. & Con. Construction,* secs. 445, 447, 515, 556. The last clauses of an Act seem to control the preceding as expressing the last intention of the Legislature. *Maxwell vs. Seney,* 5 H. & J., 26. Where there is ambiguity in a contract, it should be construed most strongly against the party who used the language. It is admitted that the appellant has performed his part of the contract, and he only asks now that the State should perform hers. The construction given to the Act by the appellees is unreasonable:

1st. Because it was not possible that the work could be done in a year. This impossibility is recognized by the Act itself. See *sections* 6, 7, 8, 9, 10, 11, 14; 2 *Parsons on Contracts,* 186; *Campbell's case,* 2 *Bland,* 209.

2d. Because it was not possible for the commissioner to know whether the restoration was complete or not at the end of the year, or at any given time.

3d. Because the restoration of the burnt papers was to be decided on by the commissioner, on the evidence, and it is contrary to public policy to make the payment of the salary of a judicial officer dependent on his deciding that the evidence was sufficient to authorize him to restore such a number of papers as would suffice to pay his salary, especially where he is invested with plenary powers, and where his decision is final.

*Arthur W. Machen* for the appellees.

The intention on the part of the Legislature, that the appellant, as commissioner, should be paid only for the work performed, is manifest from an examination of the Act.—

Its title and the language of sections sixteen and seventeen clearly indicate that the appellant could only rightfully claim the $2000, appropriated by this Act, upon "*completing* the restoration of *all* the burnt records and papers, &c." The *whole work* must be completed to entitle him to the $2000. And does not the language of the seventeenth section imply that the appellant, as commissioner, *agreed* to do the *whole* work? And if this be so, what claim can he have for full compensation, until this agreement has been complied with?

The appellant could see, before accepting the trust, the amount of labor required of him. The Legislature manifestly made an estimate of it, and they contemplated that the county commissioners should estimate the unfinished work, whenever the appellant's monthly bills were presented.— They were not to pay him as much as $1.50 a paper, if in their judgment it was more than a proportional part of what he was to receive for the *whole work.*

The Legislature had been so often appealed to on this subject, so much time and money had been expended beyond expectation, and the work not completed, that it was determined for the future, that actual performance of the work should be a condition precedent to the payment of the workman. It is no answer to say, that it was impossible to complete the work within one year. The Legislature did not think so, and if the appellant entertained a different opinion, he need not have accepted the trust; but he undertook the task, hoping, doubtless, to earn the $2000, and certain of receiving at least $1.50 for each paper restored.

It is to be noticed, that the $2000, which the county commissioners were authorized to levy for, was not to be paid to the appellant, but when collected it was to be returned to the fund from which the said appellant may have been paid for his services from time to time. They were to add $2000 to their annual levy to meet the expense, but he was to be paid out of the general funds of the county.

Warfield *vs.* County Commissioners of Baltimore Co.

MILLER, J., delivered the opinion of this Court.

We have no difficulty in affirming the order appealed from in this case. The appellant applied for a *mandamus* to compel the appellees to pay him a sum of money alleged to be in their hands, and due him as commissioner under the Act of 1865, ch. 146, entitled "an Act to provide for the completion of the restoration of the records and papers, destroyed or injured by fire, in the office of the clerk of the Circuit Court for Baltimore county," and the only question we have to consider arises upon the construction of this law.

Looking to the body of the Act, without reference to its title or the repetition of the title in the commissioner's oath, we find its object was to *complete* the *work* of restoring the burnt and injured records and papers in that office, which had been *begun* under the provisions of previous laws, all of which inconsistent therewith were thereby repealed.

The first section appoints the appellant "commissioner of records for the purpose of restoring and re-establishing such of the records and papers, dockets and indexes in the said office, as have been either wholly or partially destroyed by fire," and provides that he shall before he enters upon the discharge of his duties, take an oath "that he will well and truly execute and perform the duties prescribed and required to be performed by me as commissioner under the Act entitled," &c., setting forth the title. Subsequent sections define his powers and prescribe his duties. He is clothed with power to summon parties interested and witnesses, and to impose fines for their non-attendance. The mode of restoration—what shall be done and by what evidence any record or paper wholly or partially destroyed shall be replaced—is then particularly specified. Rules for each class of cases, that is, for the restoration of records, of deeds, of dockets, of judicial records, and of papers in any case at law or in equity pending or settled, when injured or partially or wholly destroyed, are established. He has power in certain cases to execute and record new and confirmatory deeds, and in case of dispute on

any issue before him, an appeal from his order to the Circuit Judge is given.

*Section* 16 then enacts that he " shall be allowed for his services as commissioner, for restoring and *completing the restoration of all the burnt records and papers* as indicated in this Act, and recording and indexing and filing papers relating to his office, the sum of two thousand dollars," and that he shall monthly on oath, present his accounts for settlement to the county commissioners.

*Section* 17 directs the county commissioners " to pay to said commissioner the amount due him monthly *when* it is proved by his own affidavit, and *when* said amount does not exceed one dollar and fifty cents for each paper restored and recorded according to the provisions of this Act and *is not* in *the judgment* of the county commissioners *more* than a proportional part of the whole work agreed to be done by said commissioner," and " for the purpose of providing the means of carrying out the provisions of this Act " the county commissioners are authorized and directed to levy upon the taxable property of the county for the year 1865 the sum of $2000.

*Section* 18 provides for filling the vacancy " in the event of the death, resignation, or disability of said commissioner." And *Section* 19 provides " that the whole time occupied in the execution of this commission shall not exceed one year."

The appellant took the oath of office, entered upon the performance of his duties and continued therein for one year, when, the work of restoration being still incomplete, he was interrupted by the clerk of the county who resumed the control and custody of the records and books. During the year he restored 651 papers and was paid therefor by the appellees the sum of $976.50, on his accounts from time to time presented and sworn to. He now claims the balance of the $2000.

We see no ground on which this claim can be supported. From the whole body of the Act, and especially the 16th, 17th and 19th sections we think the intention is plain:

1st. That this commissioner should not act under his commission or hold his office for a longer time than one year, and that the sum to be paid him should not in any event exceed $2000.

2d. That this whole sum of $2000 might be paid him for his services at any time within the year, but *only when* he had in the manner and by the means provided in the Act *completed* the restoration of all the burnt papers and records.

The law no where says he shall receive $2000 for one year's services *under* the Act, and to give it such a construction would be doing violence to the plain import of the language of the 16th section.

3d. That during the rendition of the services under the Act, and within the year monthly partial payments should be made to him before the work was finished, *provided* the amount of each of such payments should not exceed $1.50 for each paper restored, and *provided* also the amount of each of such payments should not *in the judgment* of the county commissioners be more than such proportional part of the $2000, as the work professing to be done when each account was presented, bore to the *whole work* to be done.

The law assumes that the sum of $2000 was sufficient compensation for the work of completing the restoration of these papers and records, and that the county commissioners, the local authorities, knew the extent of the injury by fire, how many records and papers had been totally or partially destroyed, how far the work of restoration had progressed under previous laws, and what was the number of papers to be restored or the amount of work necessary to be done in order to make the restoration complete. Each monthly account was, therefore, to be subjected to their judgment, and if the *amount* of it, whether for a greater or less number of papers, restored, did not in their judgment, at the rate of $1.50 per paper, exceed that proportion of the $2000 which that number bore to the whole number to be restored, they were to pay him at that rate, but if it did they were to reduce

the amount to the proper sum to preserve that proportion; or in other words the amount of payment for any one month's work must be such proportional part of the $2000 as the work done in that month is of the whole work to be done. We must assume that the county commissioners in paying the several accounts appearing in this record and amounting to $976.50 properly exercised their judgment upon each account. The appellant has therefore been paid all he is entitled to, for it is not pretended the work of restoration was completed by him.

It has been argued that this law is a contract between the State and the appellant, on which but one of two constructions can be placed, viz.: either *first*, that it is a contract to restore all these burnt papers and records in one year for $2000, a work which it is said was in its nature impossible of performance within one or any number of years, and therefore upon this construction the contract would be *void*, and the appellant bound to restore the money he has received; or *secondly*, and to avoid the harsh construction above stated, it must be construed as a contract to pay $2000 in monthly instalments for one year's services thereunder. If by this it is meant to assert that this law is a contract binding on both parties and beyond legislative control, or which the Legislature could not modify or repeal without a breach of public faith, we do not assent to the position. It is simply a law creating for a limited period a public office, in which the public generally, and the people of Baltimore county especially were interested, filling it by legislative appointment which the appointee could accept or not as he chose, or at any time resign, defining the powers and duties of the officer, providing and limiting his compensation, and prescribing the mode of its payment. Such a law it is perfectly competent for the Legislature at any time to modify or repeal. "Where an office is of legislative creation the Legislature can modify, control or abolish it." *Davis vs. The State*, 7 Md. Rep., 151. If, however, it is only meant

by this argument to assert that this law contains a contract on the part of the State, that the officer shall be paid for his services whilst acting under it, and whilst it remains unrepealed, we assent, but in this, as in all other such cases, the State's contract is that he shall be paid for his services only the sum and in the manner which the law specifies; what that is we have already stated. We find nothing upon the face of this Act prescribing an impossibility as a condition upon which the $2000 was to be received, nor can we infer that impossibility from any thing disclosed in this record or inherent in the nature of the duties to be performed. We cannot say from any thing that now appears to us, it was impossible to complete in the manner and by the evidence prescribed in this Act, the restoration of all these burnt papers and records in one year, or that the county commissioners, to whose judgment this matter is left by the law, could not determine when the restoration was complete, and therefore, there is no necessity for considering what would be the effect of the existence of such an impossibility, as leading to possible injustice, contradiction, or absurdity in the construction we have adopted.

(Decided 1st February, 1868.)