# BENJAMIN R. DAVIDSON *vs.* R. TILGHMAN BRICE

*No Oath of Office Can be Required by Statute Other than the Oath Prescribed by the Constitution—Term of Office of County Treasurer Appointed to Fill a Vacancy.*

Declaration of Rights, Art. 37, provides that the Legislature shall not prescribe any other oath of office than the oath prescribed by this Constitution. Constitution, Art. 1, sec. 6, provides that "every person elected or appointed to any office of profit or trust under this Constitution or under the laws made pursuant thereto, shall, before he enters upon the duties of said office, take and subscribe the following oath." The oath so prescribed is to support the Constitution of the United States and of the State of Maryland and the laws thereof, and that the affiant will diligently and faithfully, without partiality or prejudice, execute his office according to the Constitution and laws of the State. The Act of 1894, ch. 615, directed the County Treasurer for Anne Arundel County to take an oath that he "will justly and impartially value all property which I shall be authorized to value according to the best of my skill and judgment, and that I will not either directly or indirectly make any profit of the money collected by me, or the use thereof in any manner whatever." Petitioner was duly elected treasurer of said county and took the oath of office prescribed by the Constitution, but did not take the oath prescribed by the Act of 1894, and applied for a *mandamus* directing respondent, who held the office, to surrender the same to him. The answer alleged that the petitioner had failed to qualify. *Held*, that the Legislature has no power to prescribe any other oath of office than the Constitutional oath, and that the petitioner having duly qualified by taking the latter oath, is entitled to the office.

The Act of 1894, ch. 615, provides that the Treasurer of Anne Arundel County shall be elected in November, 1897, for the term of four years or until his successor is elected and qualified. It also provided that in the event of his death, &c., the county commissioners should appoint a person to serve as treasurer until a successor shall be elected at the next general election thereafter to be held for county officers. The person elected treasurer in November, 1897, died in December, 1898, and the respondent was appointed to fill the vacancy. At the general election in November, 1899, petitioner was elected treasurer of said county and gave bond and took the constitutional oath of office within thirty days. Respondent refused to surrender the office, alleging that he had been appointed to fill the same for the unexpired term of the person elected in 1897. *Held*, that under the plain language of the statute the respondent was appointed to fill the vacancy only until a successor should be elected at the next general election, and that petitioner having been so elected is entitled to the office.

Appeal from an order of the Circuit Court for Anne Arundel County, (JONES, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE and SCHMUCKER, JJ.

*Robert Moss*, for the appellant.

The office of County Treasurer of Anne Arundel County was created by the Legislature, " and by the Legislature it can be controlled, modified or abolished. " *Davis* v. *State*, 7 Md. 151; *Anderson* v. *Baker*, 23 Md. 627; *Warfield* v. *County Commrs.* 28 Md. 84; *Baltimore* v. *State*, 15 Md. 376. It was a constitutional exercise of legislative power for the Legislature to prescribe the oath to be taken by the County Treasurer of Anne Arundel County, even if the oath materially differed from the constitutional oath ; the office was of its creation, and it had the right to prescribe the manner in which the person elected to fill the office should qualify. *Martin* v. *Barbour*, 34 Fed. Rep. 703. Framers of the several Constitutions of this State have recognized the wisdom of delegating to the Legislature of the State, the power to prescribe for certain officials provided for by the Constitution an oath other than the oath prescribed by the Constitution ; (see section 1, Art. 6, of the present Constitution, *Thomas* v. *Owens*. 4 Md. 189); and at this late day, after a long line of legislative precedents, where oaths different from the constitutional oaths have been required to be taken by persons elected or appointed to offices created by the Legislature, it can no longer be doubted that the Legislature has this power, and that it is wise and prudent for it to exercise it.

The appellant has failed to find any reported case deciding that a person about to be inducted into an office, created by the Legislature, could take the constitutional oath and ignore the oath prescribed by the Legislature. Many reported cases decide that mere informalities in taking the oath are not fatal, but they can have no bearing on this case,

as it is admitted the appellee never attempted to take the oath described. In fact, took a different oath. It therefore follows, that the appellee having failed to qualify as required by law, and the appellant being rightfully in possession, and discharging the duties of the office, is entitled to hold the same until his successor is qualified. *Branham* v. *Long*, 78 Virginia, 365; *Robb* v. *Carter*, 65 Md. 321.

The Courts will follow a legislative construction that has been continually exercised for a long period of time. *State* v. *Mayhew*, 2 Gill, 341. It was necessary for the Legislature to construe Article 37 of the Declaration of Rights before it could reach the Courts, as the prohibition is upon the Legislature. Since the adoption of the Constitution of 1867, the Acts of Assembly will show that the successive Legislatures have construed this article only to apply to offices created by the Constitution and laws made *pursuant thereto ;* and since the adoption of the Constitution until the present time not a session of the Legislature has passed without some office being created and oath prescribed. This effort on the part of the Legislature to bind the conscience of a public official as to the specific duties to be performed by him has, in many of our Acts, become the leading feature of the law; such as the oath of the Police Commissioner of Baltimore City and the oath of election officials under the Australian Ballot Law.

*E. C. Gantt* and *James P. Bannon,* for the appellee.

The appointment of Benjamin R. Davidson was till the next general election of county officers ; the election held November 7th, 1899, was certainly such an election contemplated by the statute ; for general elections in Maryland are those at which the great body of State, county and township officers are chosen. *Acts of 1894,* ch. 615, sec. 223; *Paine on Elections,* sec. 284; *Constitution of Maryland,* Art. 3, sec. 6; *Mackin* v. *State,* 62 Md. 246. The certificate of the Clerk of the Circuit Court, filed May 9th, 1900, shows that R. Tilghman Brice qualified by taking and subscribing

to the oath required by law within the time required, the question being, what oath must he take? All other questions of qualification being admitted. That is, is the constitutional oath sufficient, and was he required to take a special oath as directed in section 223 similar to that of collector of taxes, except as to title of office, which oath is set out in section 36, of Article 81, of Code of Public General Laws or both? There was and is but one oath that must be taken and subscribed to, and that one is the constitutional oath; others can and may be taken in addition: *Declaration of Rights*, Article 37; *Thomas* v. *Owens*, 4 Md. 223; *Anderson* v. *Baker*, 23 Md. 531; *Mayor, etc.,* v. *State*, 15 Md. 376; *Archer's case*, 74 Md. 443; *Maryland Constitution*, Article 1, section 6; *Harwood* v. *Marshall*, 9 Md. 83.

The constitutional oath is required of all officers, either under the Constitution or created by statute; this provision of the Constitution is mandatory, except as to the Comptroller and State Treasurer. *Maryland Constitution*, Art. 6, sec. 1; *Thomas* v. *Owens*, 4 Md. 223; *Harwood* v. *Marshall*, 9 Md. 83; *Archer's case*, 74 Md. 443; *Code of Public General Laws*, Art. 19, sec. 1.

If R. Tilghman Brice had failed to take and subscribe to the constitutional oath he would have forfeited his right to the office, although he may have taken the special oath in addition. *Maryland Constitution*, Art. 1, sec. 7; *Archer's case*, 74 Md. 443. The statute does not limit or restrict the exact words of the oath to that of the collectors—shall take an oath similar in form. Now, the constitutional oath is certainly more comprehensive and sufficiently broad to include this special oath, and within the bounds of the maxim, "*Omne majus continet in se minus.*" *State* v. *Mazon*, 90 N. C. 676. The Legislature had no power to designate this special oath; it transcended its powers when it did so; as the oath did not apply to the Comptroller or State Treasurer, the only exception, coming clearly within the provision of the Constitution. Being the creature of the Constitution and acting within circumscribed sphere, the

Legislature is not omnipotent and cannot rightfully exercise any power but that which is derived from that instrument. *Whittington* v. *Polk*, 1 H. & J. 236; *Thomas* v. *Owens*, 4 Md. 189.

McSHERRY, C. J., delivered the opinion of the Court.

By an Act of Assembly—chapter 615 of the session of 1894—it was provided that the County Treasurer of Anne Arundel County should be elected by the people on the Tuesday after the first Monday in November, 1897, and on the same day in every fourth year thereafter. It was declared that he should hold his office for four years from the first Monday of May next after his election " or until his successor is duly elected and qualified." By *sec. 223* of the same statute it was enacted that the person elected should give bond and take an oath before the Clerk of the Circuit Court " in form similar to that heretofore taken by collectors of taxes, except as to the title of office ;" and that in the event of his failure to give the bond and to qualify within thirty days after his election, the County Commissioners should declare the office vacant. The same section further provided that in the event of the treasurer's death the County Commissioners should proceed to fill the vacancy by the appointment of a suitable person to serve as treasurer until his successor shall be elected " at the next general election thereafter to be held for county officers in said county, and qualified as hereinafter required." At the election of 1897, Dr. C. Morris Cheston was elected treasurer. He gave bond and qualified and subsequently entered upon the discharge of his duties. In December, 1898, he died. Thereafter the County Commissioners appointed Dr. Benjamin R. Davidson to fill the vacancy. Dr. Davidson duly bonded and qualified. At the general election of 1899, Dr. Davidson and R. Tilghman Brice were candidates for the office and the latter was returned elected. Within thirty days after the election he gave bond and took the oath of office prescribed by *sec. 6, Art. 1, of the Constitu-*

*tion,* but did not take the oath "heretofore taken by collectors of taxes," which is an oath exacted, not by the Constitution, but by *Art. 81, sec. 36, of the Code.* Dr. Davidson refused to surrender the office to Mr. Brice and based that refusal upon two grounds ; viz., *first,* that the appointment made by the County Commissioners was for the unexpired portion of Dr. Cheston's term of four years, wherefore there had been no vacancy to be filled by an election, and would be none until 1901; and *secondly,* that the failure of Mr. Brice to take the oath prescribed for collectors of taxes was a "default * * * to * * qualify within thirty days" and rendered him ineligible even though he had taken and subscribed the constitutional oath. Application was thereupon made by Brice for a writ of *mandamus* requiring Davidson to surrender the office. The Circuit Court for Anne Arundel County held that Brice was legally entitled to the office and ordered the writ to issue, and from that order Davidson entered this appeal.

The case is, in our opinion, entirely free from difficulty. The first of the two grounds upon which Davidson's refusal to vacate the office rests is completely and effectually swept away by the very statute which fixed the term of office and provided for the election of a county treasurer. The term is, by that statute, declared to be for four years from the first Monday of May succeeding the treasurer's election "or until his successor is duly elected and qualified." An incumbent duly elected and qualified, if he lives, or is not removed, or does not cease to reside in the county, or does not resign, is entitled to hold the office for four years from the first Monday of May ensuing his election, or longer, if his successor is not duly elected and does not qualify. But it is obvious that any of the contingencies just named might happen ; and if one of them should occur the incumbent's tenure would terminate prior to the expiration of the four years; and accordingly the Legislature provided that in the event of the death of the treasurer, the County Commissioners should declare the office vacant and should fill

the vacancy, not for the residue of the original term, but until a successor should be elected at the next general election and should qualify. The appointee's tenure cannot, under the express words of the statute, reach beyond the general election next ensuing his appointment and the point of time thereafter when his successor chosen at that election shall qualify.

The election of 1899 was a general election, and it was the next general election which occurred after the appointment of Dr. Davidson had been made. It was, therefore, the election at which, according to the mandate of the statute, a county treasurer was required to be chosen by the people. This being so, and Mr. Brice having at that election received a majority of the votes cast, is entitled to the office if he gave bond and properly qualified. Now, did he properly qualify?

The only oath which he took was the one prescribed by *sec. 6, Art. 1, of the Constitution.* That oath reads as follows : " I —— ———— do swear * * * that I will support the Constitution of the United States ; and that I will be faithful and bear true allegiance to the State of Maryland, and support the Constitution and laws thereof; and that I will to the best of my skill and judgment, diligently and faithfully without partiality or prejudice execute the office of ———— according to the Constitution and Laws of this State * * * ." The oath provided by the Code to be taken by collectors of taxes is in these words : " I, —— ————, collector of ————, do swear that I will well and truly execute the duties imposed upon me by law, and that I will justly and impartially value all property which I shall be authorized to value, according to the best of my skill and judgment ; and that I will not, either directly or indirectly, make any profit of the money collected by me, by the use thereof in any manner whatever." Does his failure to take this latter oath disqualify him ? Varying this question somewhat so as to present the controlling inquiry more sharply, we may ask, has the Legislature the

authority to prescribe as a qualification for the office of county treasurer any other oath than the one which *sec. 6, Art. 1, of the Constitution* imposes? If it has, then Mr. Brice did not legally qualify; if it has not, then he *did* legally qualify.

Sec. 6, Art. 1 of the Constitution is a mandatory provision. It emphatically requires that " Every person elected or appointed to any office of profit or trust under this Constitution, or *under the laws* made pursuant thereto, shall, before he. enters upon the duties of such office, take and subscribe the *following* oath or affirmation," and then comes the oath which has been transcribed above. But this is not all. Not content with prescribing the precise oath to be taken, the Declaration of Rights, in Art. 37, prohibits any other oath from being exacted, for it declares : " That no religious test ought ever to be required as a qualification for any office of profit or trust in this State, other than a declaration of belief in the existence of God ; *nor shall the Legislature prescribe any oath of office than the oath prescribed by this Constitution.*" Here, then, is an explicit limitation on the power of the Legislature. In the face of this positive and plain inhibition how can it be insisted that the Legislature may impose as a qualification for a public office some other and additional oath " than the oath prescribed by the Constitution ?" If it may require the county treasurer to take the oath prescribed by the Code for tax collectors, it may with equal propriety superadd some other and widely different oath and completely nullify the restrictive clause of Article 37 of the Declaration of Rights. It was the obvious purpose of the people who adopted the Constitution of 1867, to deprive the Legislature of any power to formulate or impose an oath of office, except as respects the State Comptroller and the State Treasurer, each of whom, *under sec. 1, Article 6 of the Constitution,* is required to " take such oath and enter into such bonds * * * * * as are now, or may hereafter be, prescribed by law."

The significance of the restrictive clause in Art. 37 of the Declaration of Rights is conspicuous, if antecedent Constitutions of the State are consulted, and if the history of the disturbed period covering the Civil War and just preceding the adoption of the Constitution of 1867 be recalled. If we turn to the Declaration of Rights of 1776 we find *Art. 35* reading in this way : " That no other test or qualification ought to be required on admission to any office of trust or profit than such oath of support and fidelity to this State, and such oath of office as shall be directed by this Convention *or the Legislature of this State*, and a declaration of a belief in the Christian religion." Art. 34 of the Declaration of Rights of 1851 was in these words : " That no other test or qualification ought to be required, on admission to any office of trust or profit, than such oath of office as may be prescribed by this Constitution, *or by the laws of the State*, and a declaration of belief in the Christian religion ; and, if the party shall profess to be a Jew, the declaration shall be of his belief in a future state of rewards and punishments." Art. 37 of the Declaration of Rights of 1864 declared : " That no other test or qualification ought to be required, on admission to any office of trust or profit, than such oath of allegiance and fidelity to this State and the United States as may be prescribed by this Constitution ; and such oath of office and qualification as may be prescribed by this Constitution, *or by the laws of the State*, and a declaration of belief in the Christian religion, or in the existence of God, and in a future state of rewards and punishments." Under the power thus conferred upon the General Assembly various oaths in addition to the oaths prescribed in the several Constitutions were adopted by the Legislature and were required to be taken by different officers. Among them was that part of the tax collector's oath requiring him to faithfully act as assessor, imposed by by the *Acts of 1841, ch. 23*, and *1847, ch. 266*, though the last part of the oath prohibiting him from making any personal profit out of the public funds was enacted in *1874*,

*ch. 483.* .There can be no doubt that the Legislature had under the· Declaration of Rights of 1776, 1851 and 1864 the authority to prescribe . oaths. of office, and in many in- stances this authority was exercised. When the Conven- tion of 1867 assembled it was a common belief that many ·of the .official oaths which. the Legislature had previously prescribed in the exercise of an undoubted power were need- lessly stringent, and this sentiment found expression in that provision of the Declaration of Rights which, by prohibit- ing any other official oath than the one set forth in the Constitution itself, took away from the General Assembly the power to .adopt or .require an additional one. The omission from the Declaration of Rights of 1867 of the authority contained in every antecedent Declaration of Rights, giving the . Legislature the power to impose an official oath was deliberate, and to give emphasis to the design of the framers of the Constitution a positive prohi- bition, introduced for the first time, was substituted for the .rejected clause.

If we turn to the proceedings of the convention of 1867 it will be found that Article 37 of the Declaration of Rights was, when reported from the committee to the con- vention, worded precisely as is Article 34 of the Declara- tion of Rights of 1851; but upon motion of Mr. Bernard Carter the following substitute was adopted : "That no religious test ought ever to be required as a qualification for any office of profit or trust in this State, nor shall the Leg- islature prescribe any oath of office than the oath pre- scribed by this Constitution." This was amended by adding after the word State " other than a declaration of belief in the existence of God." Thus the old provision which gave to the Legislature the power to exact official oaths not pre- scribed by the organic law was not only deleted, but a new clause was put in which *denied* to the Legislature the authority it formerly possessed in this particular.

· Article 37 of the Declaration of Rights is not confined to offices created by the Constitution. It contains a broad

prohibition declaring that *no* oath of office except that pre-scribed by the Constitution shall be exacted. It is wholly immaterial whether the office be of constitutional creation or of statutory origin. The *origin* of the office is not the test as to what form of oath is to be taken. No office, how-ever created, can be assumed until an official oath is taken, and *no* official oath other than that set forth in the Consti-tution can be required because that is the only one pre-scribed by the Constitution, and all others are prohibited by the Declaration of Rights. Art. 37 does two things. It prohibits any religious test as a qualification for any office of profit and trust, other than a declaration of belief in the existence of God; and it prohibits *any* oath of office other than the one set forth in *sec. 6, Art. 1*, except as respects the Comptroller and Treasurer. By no known rule of in-terpretation can these prohibitions be confined to offices specifically created by the Constitution; nor can they be restricted to a narrower scope than their plain words indi-cate. If the last of the two prohibitions does not apply to an office created by statute then neither does the first, be-cause the first is no more comprehensive than the second; and therefore if the Legislature may require a county treas-urer to take an oath in addition to the constitutional oath, it may require some other religious test than a belief in the existence of God as a qualification for the same office. It has never been pretended that the Legislature could pre-scribe a religious test for a statutory office, but it has just as much power to prescribe one as it has to disregard the equally broad and emphatic prohibition against exacting any other official oath than the constitutional oath.

Without discussing the cases relied on by the appellant's counsel, it is only necessary to say that they all arose on statutes passed prior to the adoption of the Constitution of 1867, and therefore passed when the Legislature had the authority to prescribe an additional official oath. Cases from beyond this State can have no influence on the inter-pretation of our own organic law.

It results from what we have said that the Legislature was without authority in 1894 to exact the additional oath required of the county treasurer, and as the exaction of it was unwarranted, the failure of Brice to take it cannot defeat his right to the office.

For the reasons assigned we think the order appealed from was right and it must be affirmed with costs.

*Order affirmed with costs above and below.*