COUNTY COMMISSIONERS OF CALVERT COUNTY *v.* JOHN A. MONNETT.

[No. 109, October Term, 1932.]

*Decided January 18th, 1933.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, and SLOAN, JJ.

*John B. Gray, Jr.,* with whom was *John B. Gray* on the brief, for the appellants.

*Robert H. Archer* and *Morris Rosenberg,* with whom were *Tydings, Levy & Archer* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

This case brings up for consideration principally a question whether the treasurer of Calvert County is a public officer, affected by the prohibition in article 3, section 35, of the Constitution, against increase or diminution of the compensation of public officers during their terms of office. The court of first instance concluded that he was a public officer within the meaning of that prohibition, and that there could be no diminution of compensation during his term of office under an Act of Assembly of 1931, chapter 207. This court concurs in that conclusion.

Two further questions were argued. One, going to the applicability of the constitutional prohibition to compensation of this officer, was whether the legislative diminution was, under the Act of Assembly, to take effect during his term of office or before his term had begun. Another question, material only in case the legislative diminution should be found otherwise effective as to this officer's compensation, is whether invalidity of a section of the act, providing that it should take effect on the date of its passage as an emergency law (Const. art. 16, sec. 2) would render the whole Act of Assembly invalid, and the attempted diminution of compensation ineffectual for that reason. The court of first instance concluded that the result would be merely that the act would

not take effect as an emergency law, but would take effect as ordinary statutes do in this state, on June 1st of the year of passage. Const. art. 16, sec. 2. As this court concurs in the conclusion that the attempted diminution is ineffectual as to this incumbent, under article 3, section 35, of the Constitution, this further objection to it need not be considered now. The latter clause of the Constitution, article 3, section 35, is: "No extra compensation shall be granted or allowed by the General Assembly to any public Officer, Agent, Servant or Contractor, after the service shall have been rendered, or the contract entered into; nor shall the salary or compensation of any public officer be increased or diminished during his term of office."

The question of violation of the prohibition was presented by the treasurer's amended petition for a writ of mandamus to compel the county commissioners, at the next annual levy, to levy taxes to pay compensation previously provided, an answer of the commissioners setting up the later Act of Assembly diminishing the compensation, and a demurrer by the treasurer to that answer. There is, therefore, no dispute of facts before the court at present. And from the allegations made it appears that the petitioner, appellee here, was elected treasurer of the county on November 4th, 1930, under and in accordance with article 5, section 98, of the Code of Public Local Laws of 1930, and that he duly qualified, and assumed the duties of the office on December 9th, 1930. The allegation with respect to his qualification is that he "took the oath of office as provided by section 88 of said article, * * * on the 9th day of December, 1930, and afterwards duly filed his bonds as collector of both State and County taxes * * * and thereafter assumed the duties of his office." It was alleged that the compensation for the office at that time was a commission of three per centum of the amount of state and county taxes collected and paid over by him to the commissioners (article 5, section 90, Code Pub. Loc. Laws), which percentage was estimated to produce for the fiscal year of 1931, $4,511.25; that by the same controlling section of the local laws it was made the duty of

the commissioners at their annual levy to levy a sum to pay that commission, but that the levy proposed for the year 1931 did not allow for payment of the commission, but did allow an amount of $3,500 instead, to be paid the treasurer as salary under the Act of 1931, chapter 207, which attempted to repeal and re-enact the local laws cited above and to add two new sections providing for the salary stated.

The office of the treasurer is one created by legislative enactment, and in support of diminution of compensation for this incumbent, it is urged that the constitutional prohibition is meant to apply only to compensation of those holding offices established by the Constitution directly, and not to those holding offices of legislative creation. The clause itself does not contain such a restriction; it refers to compensation of "any public officer." And an indication of intention contrary to that urged seems afforded within the clause itself in its prohibition against extra compensation "to any public officer, agent, servant or contractor, after the service shall have been rendered, or the contract entered into." The intention in that seems clearly to be to gather within the prohibition against extra compensation all persons for whom compensations have been fixed in advance for services of any kind, and we are hardly permitted to suppose that exactly the same term "public officers" is used in the same section with different meanings. *School Commrs. v. Goldsborough,* 90 Md. 193, 202, 44 A. 1055; *Roberts v. Gibson's Excr.,* 6 H. & J. 116, 124. That the treasurer of the county falls within the classification of public officer, generally speaking, is not questioned. *Hooper v. New,* 85 Md. 565, 575, 37 A. 424; *School Commrs. v. Goldsborough, supra; Davidson v. Brice,* 91 Md. 681, 48 A. 52; *Truitt v. Collins,* 122 Md. 526, 89 A. 850; *State Tax Commn. v. Harrington,* 126 Md. 157, 94 A. 537.

It is true that a distinction is drawn for some purposes between offices of legislative creation and offices specified in the Constitution and created by it, but it is drawn for some purposes only, not for all. Generally, the distinction is one of the location of the power of creation; the power to create

has been found to include the power to alter or abolish. "Where the office is of legislative creation, the Legislature can modify, control or abolish it, and within these powers is embraced the right to change the mode of appointment." *Anderson v. Baker,* 23 Md. 531, 627; *Warfield v. Baltimore County Commrs.,* 28 Md. 76, 84; *Davis v. State,* 7 Md. 151, 161; *Ash v. McVey,* 85 Md. 119, 128, 36 A. 440; *McCurdy v. Baltimore County Commrs.,* 126 Md. 318, 322, 95 A. 37. "But that rule cannot apply to an office created by the Constitution, which directs how it shall be filled, fixes the term, and provides for the removal of the incumbent." *Little v. Schul,* 118 Md. 454, 464, 84 A. 649, 653. And when offices of legislative creation are filled, the incumbents may come within comprehensive provisions of the Constitution. The present prohibition is comprehensive in terms and ordinary meaning. And the constitutional purpose of protecting officers from improper pressure by threats of diminution of compensation would seem applicable to officers without distinction with respect to the origins of their offices. This is the view held by the majority of decisions elsewhere. The Superior Court of Pennsylvania remarked that: "Many important offices exist which are not provided for by the constitution, and the number is increasing from year to year. The duties of these officials are various and of some of them highly important. The compensation of many of them is large, their existence is in harmony with the constitution and we must assume that the framers of that instrument did not overlook the fact that the necessities or convenience of the commonwealth would call for an increase of public officers with various new duties. It is hardly to be supposed that the general expression of the constitution would have been used in view of the number of offices then in existence and likely to be created by the will of the legislature if the prohibition was only to apply to the comparatively small number whose existence was required by that instrument." *Richie v. Philadelphia,* 37 Pa. Super. Ct. 190, affirmed 225 Pa. 511, 74 A. 430. And see decisions in other jurisdictions reviewed in note, 31 *A. L. R.* 1316.

106

The case is not one of an increase of salary under the Budget Amendment to the Constitution, article 3, section 52, and we need not discuss powers given in that amendment.

The answer to the question whether the diminution of the compensation of the office took place during the term of this incumbent depends upon the time of the beginning of his term. On behalf of the commissioners it is objected that, although it is alleged that the election occurred in November of 1930, and that the officer took the oath of office in December and afterwards duly filed his bonds to complete his qualification, there is no showing that the bonds were filed before June 1st, 1931; and a further section of the Act of 1931, chapter 207 (section 90A), provided that the term should not begin until that date. The court must take notice of the further provisions of the local laws. *Mitchell v. State,* 115 Md. 360, 368, 80 A. 1020. And by section 88 of article 5 of those laws, as they stood in 1930, the county treasurer was required to qualify and execute his bonds within thirty days after the receipt of his commission, or, otherwise, the Governor would be required to appoint a successor to the office. The taking of the oath of office by this incumbent on December 9th, 1930, signifies that his commission had been received, and the allegation that thereafter he duly filed his bonds seems to amount to an allegation that he did so within the limit of thirty days. The proceedings all start from the assumption that he holds the office now, despite the provision for a successor for one who does not file his bonds and complete his qualification within thirty days after the receipt of the commission.

The Act of 1931 was approved on April 6th of that year, and it follows from the allegations that this officer had entered upon the term of office for which he had been elected before the act became a law. Broad as is the power of the Legislature to alter the offices of its own creation, and whatever the effect of the section of the Act of 1931 fixing the beginning of the treasurer's term at June 1st may be on the holding of this incumbent, that provision could not alter the fact that his term of office had begun previously, and the act

could not give it another beginning. We do not see that it could be regarded as having started him on a new and distinct term; we conclude that he was serving the same term after as well as before June 1st. And this being true, the application of the constitutional prohibition to this term would not be avoided by the statutory alteration of the time of beginning.

Upon these considerations it is held that the order sustaining the demurrer, and directing the issue of the writ of mandamus to command the county commissioners to include in their next levy the amount necessary to provide the compensation demanded by the treasurer, was proper.

*Order affirmed, with costs.*