## PURNELL F. SAPPINGTON AND THOMAS M. HILL, ETC., *vs.* WILLIAM A. SLADE AND CHARLES H. WISE.

*Officers—Supervisors of Election Appointed During Recess of the Senate Holds Only Until End of Next Legislature—Constitutional Law.*

Constitution, Art. 2, sec. 11, provides that in case of any vacancy during the recess of the Senate in any office which the Governor has power to fill, he shall appoint some person to said office whose commission shall continue in force until the end of the next session of the Legislature or until some other person is appointed to the same office whichever shall first occur. The Act of 1896, ch. 202, sec. 1, provides for the appointment by the Governor, with the advice and consent of the Senate, of three supervisors of elections for each county for the term of two years. Sec. 4 of the Act provides that in case of any vacancy in the number of said supervisors occurring

when the Legislature is not in session, the Governor shall appoint some person to fill the vacancy during the remainder of the term of office of the person originally appointed. At the session of the Legislature of 1898, the Governor appointed three election supervisors for Baltimore County, one of whom resigned in September, 1899, and the Governor then appointed the petitioner for the residue of that term. At the session of the Legislature in 1900, the Governor appointed a new board of supervisors of election for that county, one of whom, the respondent in this case, failed to qualify by taking the oath of office within thirty days after the receipt of his commission by the Clerk of the Circuit Court, as is required by Code, Art. 70, sec. 10. The Governor subsequently reappointed the respondent and a new commission was issued to him, under which he qualified within the time prescribed. The petitioner, claiming that he held under his commission till his successor duly qualified ; that the failure of the respondent to qualify under his first commission authorized the petitioner to continue in office, and that there was consequently no vacancy at the time of the second appointment, applied for a *mandamus* to enforce the surrender of the office to him. *Held,*

1st. That under Constitution, Art. 2, sec. 11, the petitioner could not lawfully hold the office by virtue of the recess appointment beyond the adjournment of the succeeding session of the Legislature, and if the Act of 1896 was designed to enable such an appointee to hold until his successor qualified, it must yield to the express constitutional provision.

2nd. That the failure of the respondent to qualify under the first commission issued to him did not authorize the petitioner to hold the office until a new appointment should be made by the Governor and confirmed by the Senate, but upon such failure there was a vacancy in the office which the Governor was authorized to fill by the reappointment of the respondent.

Under Constitution, Art. 2, sec. 13, a civil officer appointed by the Governor and confirmed by the Senate holds for the term of his appointment *and* until his successor shall qualify. But an officer appointed by the Governor to fill a vacancy during a recess of the Senate under Constitution, Art. 2, sec. 11, holds the office only until the close of the next ensuing session of the Legislature, and not an additional time until the qualification of a successor.

Appeal from an order of the Circuit Court for Baltimore County (BURKE, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, SCHMUCKER and JONES, JJ.

*J. Cookman Boyd*, for the appellant.

The sole question in this case is, did the Governor, on the 31st day of May, 1900, during the recess of the Legislature, have the legal right to appoint Charles H. Wise a supervisor of election? Sappington, who claims to hold over, was appointed for the balance of a term of two years, accounting from the first Monday in May, 1898, *and* until his successor should be duly appointed and *qualified. Acts of 1896*, chap. 202, secs 3 and 4. When an officer is appointed for a definite term, he is entitled to hold over after the expiration thereof and until his successor is duly qualified, unless there be some clear provision of law in the particular case which operates as an ouster at the end of the term. *Ash* v. *McVey*, 85 Md. 119. In case of any vacancy in the number of said supervisors of election occurring when the Legislature is not in session, the Governor shall appoint some eligible person to fill such vacancy during the remainder of the term of office of the person originally appointed. *Acts of 1896*, chap. 202, sec. 4.

The Governor can appoint only to fill a vacancy, except by and with the advice and consent of the Senate. Did such a vacancy exist in the office of supervisor of election of Baltimore County? The nomination and confirmation by the Senate of Charles H. Wise, did not of itself end the term of Purnell F. Sappington. It required a qualification as well, and the failure of Wise to qualify under said nomination and confirmation continued Sappington in office. *Smoot* v. *Sommerville*, 59 Md. 84; *Archer, &c.*, v. *State*, 74 Md. 445.

When the Governor is authorized to fill a vacancy in an office, the vacancy must exist before the power of appointment can be exercised, and the act of the Governor in appointing a successor to a person rightfully holding over in office because there is no qualified successor cannot create a vacancy. *Ash* v. *McVey*, 85 Md. 119. When an appointment is made to fill a vacancy and for the unexpired term, such appointee holds in the same manner as the per-

son whose place he takes held, namely, for the residue of the term and until his successor should qualify.  *Ibid.*

The office of supervisor of election is of Legislative creation.  The method of appointment prescribed by the Act creating the office, goes so far in limiting the power of the Governor in making appointments to this office, as to compel him to select from lists of names furnished him by political organizations not dreamed of by the Constitution. The Act in question, creating the office, does prescribe a different mode of appointment than that mentioned in the Constitution.  Where the office is of Legislative creation, the Legislature can modify, control or abolish it, and within these powers is embraced the right to change the mode of appointment.  *Davis* v. *State*, 7 Md. 161; *Anderson* v. *Baker*, 23 Md., 627; *Warfield* v. *Co. Com.*, 27 Md. 76. It is therefore submitted, that at the time of Wise's second appointment there was no vacancy, that the Governor only had the right to make the appointment in case a vacancy existed, and that the power of the Governor in this respect has not been enlarged by Constitution, Art. II, sec. 7.   The Constitution, Art. II, sec. 7, requires a new appointment to be made, but made in the manner prescribed by law, viz.: by and with the advice and consent of the Senate.

*John Prentiss Poe* and *A. P. Shanklin*, for the appellees.

The precise question presented in this case has never been before this Court.   The case of *Ash* v. *McVey*, 85 Md., which is strongly relied on by the appellant, differs from this in the material circumstance that *there* the Senate did *not* act on Governor Lowndes' nomination of a successor to Mr. Ash.   *Here* the Senate did confirm Mr. Wise as the appointee of Governor Smith and when he failed to qualify under this appointment the provision of section 7, of Article I, of the Constitution imposed the positive and imperative duty upon the Governor of making another appointment.   He commissioned the appellee Wise, who thereupon qualified within the time prescribed by law, and thus became,

as we respectfully contend, entitled.to the office. Our con-
tention in brief is that the failure of Wise to qualify created
a vacancy under the plain terms of section 7, of Article I, of
the Constitution, and that thereupon it became the duty of
the Governor to make a new appointment. *Archer* v. *State,*
74 Md. 443. This he did ; his new appointee accepted the
office and qualified, and thus became entitled to the office
of supervisor, vice himself, failed to qualify. The conten-
tion of the appellants would, we respectfully insist, nullify
this plain mandate of the Constitution.

McSHERRY, C. J., delivered the opinion of the Court.

This case was decided shortly after it had been argued,
and a *per curiam* order was then filed. We will now pro-
ceed to give our reasons in support of the conclusion then
announced.

In eighteen hundred and ninety-eight, Governor Lowndes
appointed William N. Mays, William W. Boyce and Charles
A. Councilman, Supervisors of Election for Baltimore
County. The term of office prescribed by the *Act of 1896,
ch. 202, sec. 1,* is two years. These appointees duly quali-
fied and entered upon the discharge of their duties. In
September, eighteen hundred and ninety-nine, Mr. Mays
resigned, and a few days later, the Legislature not then
being in session, the Governor appointed Purnell F. Sap-
pington for the residue of Mays' term. When the General
Assembly convened in January, nineteen hundred, the ap-
pointment of Mr. Sappington was not sent to the Senate for
confirmation. Within the first fifty days of the session of
nineteen hundred, Governor Smith nominated, and the Sen-
ate confirmed William A. Slade, Thomas M. Hill and
Charles H. Wise, as the Supervisors of Election for Balti-
more County, for the term of two years, to begin on the first
Monday of May following. Commissions were duly issued
to them, but Wise being ill was unable to qualify within
thirty days after the receipt of his commission by the clerk.
This failure to qualify created a vacancy under *sec. 10, Art.*

*70 of the Code,* which declares that, "Any person whether elected or appointed to office, who shall decline or neglect to take and subscribe the oaths prescribed by the Constitution  *   *   *   *   *  for the period of thirty days, from the day when the commission of such officer has been received at the office of the respective clerks  *  *  *  *  *  * shall be deemed to have refused said office." The Governor thereupon reappointed Wise, *vice* himself, failed to qualify, and a new commission was issued to him. He qualified under this on the twelfth day of June, nineteen hundred. Sappington refused to recognize the validity of this latter appointment, and claimed that he legally held the office under the recess appointment, which had been made by Governor Lowndes, in September, eighteen hundred and ninety-nine ; but his claim to the office was denied and he then instituted these proceedings to procure a *mandamus*. requiring Wise to surrender and deliver up the office to him. The precise question raised by the pleadings is : Did the failure of Wise to qualify under the first commission issued to him, authorize Sappington to hold the office until a new appointment should be made by the Governor, and confirmed by the Senate? This question suggests, because it involves, the further question : How long was Sappington lawfully entitled to hold the office to which he had been appointed in the fall of eighteen hundred and ninety-nine, during the recess of the Legislature ? The answer to these questions will be found in the Constitution of the State.

It must be borne in mind that Sappington's appointment was not for a full term of two years *and* until his successor should be appointed and should qualify—it was a recess appointment for the residue of a partially filled term. Section 11, Article 2 of the Constitution makes express provision for just such a contingency. It reads as follows : " In case of any vacancy during the recess of the Senate, in any office which the Governor has power to fill, he shall appoint some suitable person to said office, whose commission shall continue in force until the end of the next session

of the Legislature, or until some other person is appointed
to the same office, whichever shall first occur ; and the nom-
ination of the person thus appointed during the recess, or
of some other person in his place, shall be made to the Sen-
ate within thirty days after the next meeting of the Legis-
lature." No matter what language the commission issued
to Sappington employed, the words of the Constitution are
clear and emphatic, and they declare that the person ap-
pointed by the Governor during the recess of the Senate
shall hold only until the end of the next General Assembly
or until the *appointment* of some other person to the same
office. The organic law thus limits the term of a person
appointed by the Executive during a recess of the Senate
to fill a vacancy, and nothing can extend that term beyond
the limit so set. The language is explicit—" In case of any
vacancy during the recess of the Senate in *any* office which
the Governor has power to fill, &c." Under no circum-
stances could Sappington have held in virtue of the recess
appointment beyond the adjournment of the succeeding ses-
sion of the Legislature. This would have been true even
though no one had been nominated to and confirmed by
the Senate in his place and stead. To recess appointments
like that under which Sappington held, the provisions of
*sec. 13, Art. 2,* of the Constitution do not apply. That sec-
tion declares : "All civil officers appointed by the Governor
and Senate, shall be nominated to the Senate within fifty
days from the commencement of each regular session of
the Legislature ; and their term of office, except in cases
otherwise provided for in this Constitution, shall commence
on the first Monday of May next ensuing their appoint-
ment, and continue for two years (unless removed from
office) and until their successors, respectively, qualify ac-
cording to law   *   *   *." Under this section a civil offi-
cer holds for the term of two years *and* until his successor
shall qualify ; whereas a recess appointment cannot, under
section 11, continue beyond the close of the next ensuing
Legislature. Nor can the General Assembly disregard sec-

tion 11 when the office is a civil office which must be filled in the first instance by Executive appointment. It is true the statute—*Act of 1896, ch. 202, sec. 4*—declares that " in case of any vacancy in the number of said supervisors of election occurring when the Legislature is not in session, the Governor shall appoint some eligible person to fill such vacancy during the remainder of the term of office of the person originally appointed ;" but no legislative enactment can extend a term beyond the limit fixed in the Constitution, which is, in case of an appointment to fill a vacancy, not till the qualification of a successor, but the end of the session of the Legislature following the appointment ; and the statute, if providing otherwise must bend to the organic law. The Legislature may in creating an office fix its term for a longer period than two years, provided the mode of filling the office be not by Executive appointment. But no such office is here involved. Under section eleven of the Constitution when a vacancy occurs during a recess of the Legislature in any civil office which the Governor has the power in the first instance to fill by appointment, as he has in the case of election supervisors, the limit of the tenure of the recess appointee can never extend beyond the close of the session of the ensuing Legislature. The Legislature of nineteen hundred adjourned on April the third, and even if there had been no new appointment made Mr. Sappington's holding would have ended on that day.

This has been settled in at least one case heretofore decided by this Court. In *Kroh* v. *Smoot*, 62 Md. 172, these were the facts : In 1882, during the recess of the Senate, the Governor appointed Smoot to be Inspector of Tobacco Warehouse No. 2, to fill a vacancy caused by the resignation of one Somerville, a prior incumbent. On the third of January, 1884, this recess nomination was sent to the Senate and was confirmed. During the same session of the Legislature, but later on, the Governor nominated Kroh to the Senate to be Inspector of Tobacco Warehouse No. 2 for the full constitutional term of two years to begin on the

first Monday of March, 1884, but the Senate finally adjourned on March the thirty-first without acting on the nomination. On April the second, after the adjournment of the Legislature, the Governor appointed and commissioned Kroh, who qualified and gave bond, and then demanded the office from Smoot, but the latter refused to surrender it. Thereupon Kroh made application for a *mandamus* and his right to have the office was thus directly put in issue. If Kroh had a right to the office under the appointment made by the Governor after the adjournment of the Legislature in 1884, it was solely because Smoot's recess appointment of 1882, which had been confirmed by the Senate in 1884, had terminated upon the adjournment of the Legislature on March 31st, 1884. It was contended in behalf of Smoot that as his recess appointment had been sent to the Senate and confirmed, he was entitled to hold until displaced by a successor appointed by the concurrent act of the Governor and Senate. But this Court repudiated that contention. His appointment having been a recess appointment, it was held that it terminated when the legislative session of 1884 came to an end, even though that recess appointment had been confirmed by the Senate; and it was also held that the appointment so terminated because under *sec. 11, Art. 2, of the Constitution* that period is the one fixed beyond which the commission shall not run or continue in force. And the Court said: " It is true, upon this construction, in the case of an appointment to fill a vacancy in office, other than the office of inspector of tobacco, it may be that the Governor may be required to make an *ad interim* appointment, for the period between the end of the Legislature and the first Monday of May ensuing, the latter date being the time of commencement of the term of office as fixed by *sec. 13, Art. 2, of the Constitution;* but to avoid that consequence we are not justified in totally, disregarding the express limitation, that the commission to the party appointed by the Governor during the recess to fill the vacancy ' shall continue in force until the end of the

next session of the Legislature, or until some other person is appointed to the same office, which ever shall first occur.' These terms are imperative, and they must have accorded to them their full force and effect.    And as by this limitation the appointment and commission of the appellee terminated with the end of the last Legislature, it follows that from that time there was a vacancy in the office until a successor was appointed as provided by the Constitution to fill such vacancy." As the term of Mr. Sappington came absolutely to an end when the Legislature of nineteen hundred adjourned there was no extension of it by the superaddition of the intervening period which elapsed between the time of that adjournment and the time of the actual qualification of Mr. Wise, and upon no ground can it be maintained that Sappington is lawfully an incumbent of the office now.    Of course if he is not lawfully entitled to the office he cannot by a writ of *mandamus* or by any other process require Wise to surrender it to him.

There is nothing in the case of *Ash* v. *McVey*, 85 Md. 119, at all in conflict with the conclusion just announced. The case of *Ash* v. *McVey*, arose out of a contest over the position of school commissioner; but a school commissioner is not a *civil officer*, *School Coms.* v. *Goldsborough*, 90 Md. 193; whilst a supervisor of election is. A school commissioner not being a civil officer the provisions of *sec. 13, Art. 2, of the Constitution*, limiting the tenure of civil officers to two years, except in the contingencies named in the section, have no application.

The Court below decided that Mr. Sappington was not entitled to the office of election supervisor. That conclusion accords with the view we have just expressed, and for the reasons we have assigned the order dismissing the petition for a *mandamus* should be affirmed with costs, and it was accordingly so determined when the *per curiam* order was filed on the fifth of October last.

> *Order affirmed with costs above and*
> *below.*

(Decided November 15th, 1900.)