# JOHN W. RIGGIN

## *vs.*

# EDWARD B. LANKFORD.

*Supervisors of Elections: civil officers, under Section 10 of Article 2 of Constitution; power of Governor to appoint; Section 1 of Article 53; after rejection by Senate.*

At the January Session of the General Assembly of 1916, the Governor, by and with the advice and consent of the Senate, appointed the appellee L., and also C. and F., to constitute the Board of Supervisors of Elections for Somerset County. These appointees were commissioned and qualified, and entered upon the duties of their office. In January, 1918, the Democratic State Central Committee for Somerset County submitted to the Governor the names of four eligible persons, with the request that he select one of said persons to represent the Democratic Party of Somerset County as an Election Supervisor for that county for two years, beginning May 1, 1918. From these four names the Governor selected Q. to represent the Democratic Party and, from a list submitted by the Republican State Central Committee for Somerset County, he selected F. These two persons, together with W., the Governor's personal selection, were, within fifty days from the commencement of the Session of 1918, nominated to the Senate for appointment and confirmation as the Board of Election Supervisors of Somerset County for two years, beginning May 1, 1918, to succeed the Board of Election Supervisors first above mentioned, then holding office in Somerset County. The Senate confirmed the nominations

of F. and W., but within ten days next before the adjournment of the Legislature, *i. e.,* on March 27, 1918, rejected the nomination of Q.  After the adjournment of the Legislature, the Governor, on May 20, 1918, appointed and commissioned the appellant R., who was one of the persons submitted for appointment by the Democratic State Central Committee for Somerset County, as Supervisor of Elections to represent the Democratic Party, *vice* Q., rejected.  R. qualified as Supervisor, under the appointment, by taking the required oath of office on May 25, 1918.  L. refused, upon the request of R., to vacate and surrender to him the office of Supervisor of Elections to which he had been appointed in 1916, and, in his answer to a petition filed by R. for a writ of mandamus to command him to vacate and surrender to R. the office of Supervisor, alleged that he, L., was originally appointed by the Governor, with the concurrence of the Senate, from a list of qualified persons submitted to the Governor by the then Democratic State Central Committee for Somerset County to represent the Democratic Party of said county on said board, in accordance with the provisions of the election law of Maryland; that, having been so appointed, he was entitled to serve in such capacity until his successor should be appointed and qualified according to law; that Q. having been rejected by the Senate of Maryland upon his nomination as aforesaid to that body by the Governor as the representative of the Democratic Party aforesaid on said board, the respondent L. lawfully continued in office as a member of said board under his appointment aforesaid, and was entitled to so serve until the appointment and qualification according to law of his successor; that the Senate of Maryland having rejected the nomination of Q., in the manner and at the time aforesaid, and at a time when the Governor was afforded ample opportunity before the adjournment of the Legislature of 1918, to nominate to the Senate some other suitable person to serve in said office, if he so desired, the Governor was not authorized, required or permitted by law, after the final adjournment of the Legislature, under the conditions and circumstances above set forth, to make an appointment of Supervisor of Elections for Somerset County to take the place of the respondent L., without the Senate's consent, and at a time when such consent could not be obtained; that no vacancy existed in said office and that the Governor

could not create a vacancy, and the respondent L. continued in office as the only legal and qualified member of said board to represent the Democratic Party of said county thereon.    To this answer the appellant R. demurred.  *Held,* that the Governor had the power to appoint the appellant R. at the time the appointment was made, and that the demurrer to the answer should have been sustained and a writ of mandamus issued as prayed.                             pp. 149-153

Whilst the office of Supervisor of Elections is a civil office within the meaning of Section 10, Article 2 of the Constitution, it is an office of statutory creation, and as to such class of offices it is within the power of the Legislature to modify, control or abolish them and to change the mode of appointment, without violating any provision of the Constitution.        p. 153

The Code, Section 1, Article 33, provides that the Governor biennially, by and with the advice and consent of the Senate, if in session, and if not in session, then the Governor alone, shall appoint in each and every county of the State and in the City of Baltimore, three persons who shall constitute and be styled "The Board of Supervisors of Elections of the respective counties and of said city."   It further prescribes the qualifications of such appointees and declares that they shall "hold office for two years and until their successors are appointed and qualified:"   Admitting that there was no vacancy in the office at the time the appellant R. was appointed, and that the appellee L. was legally occupying the office until the appointment and qualification of his successor, *Held:*               pp. 153-155

1.   That the statute creating the office clearly contemplates that the members of the board should be primarily appointed biennially by the Governor, by and with the advice and consent of the Senate, and further provides that two of its members shall be selected from the two leading political parties of the State from lists of four eligible persons submitted by the State Central Committees of said respective parties.        p. 154

2.   That if the position of the appellee L. were sustained, he would hold said office in defiance of one of the main provisions of the statute, as he was not recommended for appointment by the State Central Committee of Somerset County.        p. 154

3.   Supervisors of Elections being civil officers, it was the plain duty of the Governor, both by the statute and under Section 13, Article 2 of the Constitution, to send the names of the nominees to the Senate within fifty days of the commencement of its session; that the Governor discharged this duty, but the Senate having rejected one of his nominees, while he might have submitted another name in the place of the one rejected, there is no provision either in the Constitution or the statute requiring him to do so.                              p. 154

4.   That the Senate not being in session at the time the appointment of the appellant R. was made, the Governor had the power, under the express provision of the statute, to appoint him in the place of Q., whom the Senate had rejected.     p. 154

5.   That the appellant R. was legally appointed and, having qualified, the demurrer to the answer should have been sustained and a writ of mandamus issued as prayed.               p. 155

*Decided October 22d, 1918.*

Appeal from Circuit Court for Somerset County.   (DUER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and CONSTABLE, JJ.

The case was submitted on briefs by *Gordon Tull,* for appellant.

*Joshua W. Miles,* for appellee.

BURKE, J., delivered the opinion of the Court.

At the January Session of the Legislature of Maryland for the year 1916, the Governor by and with the advice and consent of the Senate, appointed Edward B. Lankford, Lambert W. Cox and George H. Ford to be and constitute the

Board of Supervisors of Election for Somerset County. These appointees were commissioned, and qualified, and entered upon the duties of their office.

In January, 1918, the Democratic State Central Committee for Somerset County submitted to the Governor the names of four eligible persons, viz: Lorie C. Quinn, Jr., John W. Riggin, William J. Phillips and John W. Morris, with the request that he select one of said persons to represent the Democratic party of Somerset County as an Election Supervisor for that county for two years beginning the first day of May, 1918. From this list the Governor selected Lorie C. Quinn, Jr., to represent the Democratic party, and from a list submitted by the Republican State Central Committee for Somerset County, he selected George H. Ford. These two persons, together with Henry J. Waters, who was the Governor's personal selection, were, within fifty days from the commencement of the session of 1918, nominated to the Senate for appointment and confirmation as the Board of Election Supervisors of Somerset County for two years beginning on the first day of May, 1918, to succeed the Board of Supervisors of Election above mentioned, then holding office in Somerset County. The Senate confirmed the nomination of George H. Ford and Henry J. Waters, but within ten days next before the adjournment of the Legislature, to wit, on the 27th of March, 1918, rejected the nomination of Lorie C. Quinn, Jr. After the adjournment of the Legislature the Governor, on the 20th day of May, 1918, appointed and commissioned the appellant, John W. Riggin, who was one of the persons submitted for appointment by the Democratic State Central Committee for Somerset County, * * * a Supervisor of Elections to represent the Democratic Party *vice* L. C. Quinn rejected. Riggin qualified, under the appointment as Supervisor of Elections for Somerset County by taking the required oath of office before the clerk of the Circuit Court for Somerset County on the 23rd day of May, 1918. He possessed the qualifications prescribed by law for the office of Supervisor of Elections.

Edward B. Lankford, who, as above stated, was appointed
and qualified in 1916 as a Supervisor of Elections, claiming
that the appointment and qualification of John W. Riggin
was illegal, refused upon the request of said Riggin, to vacate
and surrender to him the office of Supervisor of Elections to
which he had been appointed in 1916, together with certain
books and papers of said office then in his possession. He is
now in the possession of said office and is discharging the
duties thereof.

The appellant filed a petition in the Circuit Court for
Somerset County in which, after stating the essential facts
which we have set forth, together with certain other facts,
which, for the purposes of this case need not be considered,
in which he prayed "that a writ of mandamus may be issued
directed to the said Edward B. Lankford, former member of
the Board of Supervisors of Elections for Somerset County,
as aforesaid, commanding him to vacate, give up and sur-
render to your petitioner the office of Supervisor of Elections
for Somerset County, which is by him unlawfully held and
exercised to the damage of your petitioner and to the detri-
ment of the public service; and also commanding him to
return to the office of the Board of Supervisors of Elections
for Somerset County the said Minute Book, and all other
property belonging to said board in his possession, whatso-
ever may be its nature, kind or description, and further, com-
manding him, his agents, servants, employees and assistants
to desist from interfering or intermeddling in any manner
with your petitioner or his associates in office in the legal
performance of their duties as the Board of Supervisors of
Elections for Somerset County."

The answer of the appellee to this petition did not deny
any of the essential facts, but set out in the third paragraph
of his answer the following facts and constructions of law as
constituting good cause why the writ of mandamus should
not issue:

"(1) That the time of his original appointment as
a member of the Board of Supervisors of Elections

for Somerset County, during the session of the Legis-
lature of 1916, as alleged in the first paragraph of said
petition, his said appointment was made by the Gov-
ernor of Maryland, by and with the consent of the
Senate, from the list of qualified persons submitted
to the Governor by the then Democratic State Central
Committee for Somerset County, to represent the
Democratic Party on said board, and your respondent
was so appointed to represent said Democratic Party
of said county on said board, in accordance with the
provisions of the election laws of Maryland in such
case made and provided; (2) that he is advised and
alleges that having been so appointed he is entitled to
serve in such capacity until his successor shall be ap-
pointed and qualified according to law; that the said
Lorie C. Quinn, Jr., having been rejected by the Sen-
ate of Maryland, upon his nomination as aforesaid to
that body by the Governor of Maryland, as the repre-
sentative of the Democratic Party aforesaid on said
board, your respondent lawfully continued in office as
a member of the Board of Supervisors of Elections
of Somerset County under his appointment aforesaid,
and is entitled to so serve until the appointment and
qualification according to law of his successor; (3)
that the Senate of Maryland having rejected the nomi-
nation of Lorie C. Quinn, Jr., in the manner and at
the time set out in plaintiff's petition, and at a time
also when the Governor of Maryland was afforded am-
ple opportunity before the adjournment of the Legis-
lature of 1918, to nominate to said Senate some other
suitable person to serve in said office, if he so desired,
the said Governor is not authorized, required, or per-
mitted by law, after the final adjournment of the
Legislature, under the conditions and in the state of
circumstances above set forth, to make an appoint-
ment of Supervisor of Elections for Somerset County
to take the place of your respondent, without the Sen-
ate's consent, and at a time when such consent could
not be obtained; (4) that he is advised and alleges
that no vacancy existed in said office, and that the

Governor could not create a vacancy, and your respond-
ent continued in office as the only legal and qualified
member of the Board of Supervisors of Elections for
Somerset County, to represent the Democratic Party
of said county on said board."

To this answer the appellant demurred. The demurrer
was overruled, and the appellant declining to plead further
the petition was dismissed by order of Court. The appeal
before us was taken from that order.

This Court on the 15th day of October, 1918, filed in the
case the following *per curiam* opinion: "The Court being of
opinion that the Governor had the power to appoint the appel-
lant, John W. Riggin, at the time the appointment was made
and that the demurrer to the answer should have been sus-
tained. It is ordered this 15th day of October, 1918, by
the Court of Appeals of Maryland that the order of the lower
Court overruling the demurrer and dismissing the petition
of said John W. Riggin be reversed and the cause remanded
in order that a writ of mandamus issue as prayed. An opin-
ion will be filed later giving the reasons of the Court more
fully for the conclusion reached."

The office of Supervisor of Elections is a civil office within
the meaning of section 10, Article 2, of the Constitution.
*Sappington* v. *Slade,* 91 Md. 640.

But it is an office of statutory creation, and as to such class
of offices it is within the power of the Legislature to modify,
control, or abolish them and to change the mode of appoint-
ment without violating any provision of the Constitution.
*Anderson* v. *Baker,* 23 Md. 627; *Warfield* v. *County Com-
missioners,* 28 Md. 76; *Townsend* v. *Kurtz,* 83 Md. 331.

The Code, section 1, Article 33, provides that the Gov-
ernor biennially by and with the advice and consent of the
Senate if in session, and if not in session, then the Governor
alone, shall appoint in each and every county of the State
and in the City of Baltimore, three persons who shall con-
stitute and be styled "The Board of Supervisors of Election

of the respective counties and of said city." It further pre-
scribes the qualifications of such appointees, and declares that
they shall "hold office for two years and until their successors
are appointed and qualified." It is admitted under the con-
ceded facts of this case that there was no vacancy in the
office at the time the appellant was appointed, and it must
also be admitted that the appellee was legally occupying the
office until the appointment and qualification of his successor.
The sole question presented by the appeal is one of law, and
is this: Did the Governor have the power to appoint the
appellant at the time he did appoint him? The statute creat-
ing the office clearly contemplates that the members of the
board should be primarily appointed biennially by the Gov-
ernor by and with the advice and consent of the Senate, and
it further provides that two of its members shall be selected
from the two leading political parties of the State from lists
of four eligible persons submitted by the State Central Com-
mittees of said respective parties. If the position of the
appellee be sustained he will hold said office in defiance of
one of the main provisions of the Statute, as he was not recom-
mended for appointment by the State Central Committee of
Somerset County. Supervisors of Elections being civil offi-
cers, it was the plain duty of the Governor, both by the
Statute and under section 13, Article 2, of the Constitution,
to send the names of the nominees to the Senate within fifty
days of the commencement of its session. This duty he dis-
charged, but the Senate rejected one of his nominees. While
he might have submitted another name in the place of the
one rejected, we find no provision either in the Constitution
or the Statute requiring him to do so. There may be many
reasons why he could not do so, and the law wisely, we think,
refrained from imposing that duty upon him. The Senate,
not being in session at the time the appointment of the appel-
lant was made, the Governor had the power under the express
provision of the Statute to appoint him in the place of Lorie
C. Quinn, Jr., whom the Senate had rejected. Under this

construction the obvious purpose and intent of the law is maintained and given effect. No other conclusion, in our opinion, could be reached without giving a narrow and restricted meaning to the Statute and by reading into the Constitution and law prohibitions upon the power of the Governor which do not appear therein.

For these reasons we held that the appellant was legally appointed and having qualified, the demurrer to the answer should have been sustained, and accordingly the order dismissing the petition was reversed, and the case was remanded in order that a writ of mandamus issue as prayed. *County Commissioners* v. *Banks,* 80 Md. 321; *Hardcastle* v. *M. & D. R. R. Co.,* 32 Md. 32; *Hooper* v. *New,* 85 Md. 565.

> *It is ordered that the costs be paid by the appellee.*