## HOWARD COUNTY METROPOLITAN COMMISSION et al. *v.* WESTPHAL et al.

[No. 128, September Term, 1963 (Adv.).]

336

*Decided July 19, 1963.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*Robert E. Wieder* and *Everett L. Buckmaster,* with whom were *Charles Mindel* and *Wilbert H. Sirota* on the brief, for appellants.

*Nelson R. Kerr* for Earl C. Westphal, one of appellees.

*Richard W. Emory,* with whom were *William J. McCarthy* and *Venable, Baetjer & Howard* and *Charles A. Reese* on the brief, for Herbert Lapp, and others, other appellees.

HORNEY, J., delivered the opinion of the Court.

This action for declaratory and injunctive relief was brought by Earl C. Westphal, a resident and taxpayer of Howard County, on behalf of himself and others similarly interested, to test the constitutionality of subsections (a) and (c) of § 125 of the Howard County Code (1957 Ed.),[1] as amended by Chapter 530 of the Laws of 1961, and the validity of the action of the Howard County Metropolitan Commission in authorizing the issuance of $2,500,000 in bonds to finance the construction of approved water and sewerage systems in three sub-sanitary districts of the county. Other interested residents and taxpayers of the county subsequently sought and were permitted to intervene in the action.

Chapter 991 of the Laws of 1943 created certain sanitary districts within Howard County and provided for the incorporation of a Howard County Metropolitan Commission (usually hereinafter referred to as the Commission) composed of three members appointed by the Board of County Commissioners of Howard County (usually hereinafter referred to as the Board), to govern the sanitary districts thereby created. In addition to the power to construct, maintain and operate the water, sewerage and drainage systems and to employ such personnel as was necessary to perform these functions, the Commission was authorized, among other things, to purchase and condemn property; to issue bonds on the faith and credit of the county; and to levy taxes, assessments and other charges for the payment of such bonds and the cost and expense of operating, maintaining and controlling such systems. It was further provided that each member of the Commission should receive a fixed annual salary.

By Chapter 287 of the Laws of 1957, the original statute (as previously amended by Chapter 606 of the Laws of 1945 and Chapter 162 of the Laws of 1955) was repealed and reenacted to provide for increases in the salaries of the members of the

---

1. Such of the public local laws of Howard County as were in force "to and inclusive of the Acts of the General Assembly of 1929," are designated as Article 14 in the 1930 Code of Public Local Laws of Maryland.

Commission and the appointment of one of the county commissioners to sit at meetings of the Commission. Chapter 530 of the Laws of 1961 amended § 125 (a) of the Howard County Code so as to provide for an increase in the membership of the Commission from three to four members, one of whom was to be a county commissioner designated by the Board to serve on the Commission. Section 125 (c) was also so amended as to provide that should any proposition before the Commission remain unresolved because of a tie vote or should any member of the Commission dissent with respect to any action taken by it, such proposition or action should be finally determined by the Board. However, § 125 (b) of the county code, relating to the payment of salaries to members of the Commission, was not amended to exclude payment of compensation to the county commissioner member.

Lastly, Chapter 369 of the Laws of 1963 provided other and additional changes, the effect of which is to return to. the Board some of the powers and duties which had theretofore vested in the Commission. Section 129 of the county code, however, was not altered. Under it the Commission still has authority to issue bonds on the faith and credit of the county.

In April of 1961, the Commission, then consisting of three appointed members (Roger V. Laynor, Leroy C. Moser and J. Carroll Jenkins), approved surveys, plans, specifications and estimates for water and sewerage systems in the Elkridge and Dorsey sub-districts to be financed by grants in aid from the Federal Government and from the State of Maryland and in part by the issuance of bonds on the faith and credit of Howard County in the aggregate amount of $1,500,000.

In February of 1963, the Commission, then consisting of four members (of whom Roger V. Laynor, Leroy C. Moser and J. F. Ammerman were appointed members, and David W. Force, a county commissioner, was the member designated by the Board), approved revised surveys, plans, specifications and estimates for water and sewerage systems in the Patuxent sub-district to be financed in part by the issuance of bonds in the amount of $1,000,000.

On June 10, 1963, the Commission, then consisting of the same four members, authorized and gave final approval to the

issuance of bonds on the faith and credit of Howard County in the amount of $2,500,000 to finance the water and sewerage systems in the Elkridge, Dorsey and Patuxent sub-districts as theretofore approved by the Commission.

Of the three appointed members presently serving on the Commission, two, Roger V. Laynor and Leroy C. Moser, are employed elsewhere. Laynor holds a position in the office of the Comptroller of the Treasury. Moser holds a position with the State Roads Commission.

The lower court, in ruling on the questions raised by the amended bill of complaint, declared that both subsections (a) and (c) of § 125 of the county code were unconstitutional and void; declared that the action of the Commission—in approving the Elkridge, Dorsey and Patuxent water and sewerage systems and authorizing the issuance of the bonds to finance them—was valid; and denied the injunctive relief sought. These appeals followed. The Commission contends that both subsections of § 125 are constitutional and that the action of the Commission was valid. Westphal contends that both subsections are unconstitutional and that the action of the Commission was invalid. The intervenors contend that the decree of the lower court should be affirmed in its entirety.

(i)

The first question to be decided is whether subsections (a) and (c) of § 125 of the county code, as amended by Chapter 530 of the Laws of 1961, or either of them, are unconstitutional in that they violate Article 35 of the Declaration of Rights providing that "no person shall hold, at the same time, more than one office of profit, created by the Constitution or Laws of this State."

Since it is not disputed that the office of a county commissioner is one of profit (see *Hetrich v. County Commissioners of Anne Arundel County*, 1960, 222 Md. 304, 306, 159 A. 2d 642), it is clear that if membership on the Metropolitan Commission is also an office of profit within the meaning of Article 35, then § 125 (a) is unconstitutional and void.

There is, as we see it, little room for doubt that a member of the Commission is a public officer. Although it is a fact

that none of the members received a commission, gave an official bond or took an oath of office, it is apparent, from a reading of the statute, that the duties conferred by law on the members of the Commission call for the exercise of a large portion of the sovereign power of government with respect to water, sewerage and drainage for the benefit of the people of Howard County. See *Gary v. Board of Trustees,* 223 Md. 446, 449, 165 A. 2d 475 (1960) ; *Hetrich v. County Commissioners, supra* (at p. 307 of 222 Md.) ; *Pressman v. D'Alesandro,* 211 Md. 50, 55, 125 A. 2d 35 (1956) ; *Nesbitt v. Fallon,* 203 Md. 534, 544, 102 A. 2d 284 (1954) ; *Buchholtz v. Hill,* 178 Md. 280, 283, 13 A. 2d 348 (1940). In addition to these tests, it must not be overlooked that the provisions of § 125 (b) of the county code do not preclude the county commissioner member from accepting (though in fact he did not) the emoluments of the office and that the refusal of the designated county commissioner to accept a salary did not validate his designation as a member of the Commission. See *Hetrich v. County Commissioners, supra* (at p. 310 of 222 Md.). Moreover, the contention of the Commission that the common law doctrine—to the effect that a member of an appointing body is ineligible for appointment to a conflicting office by that body—ought not to be applied here so as to invalidate the membership of the county commissioner because he was specifically designated to serve as a member of the Commission, ignores the very purpose of Article 35 of the Declaration of Rights. We hold therefore, as did the lower court, that § 125 (a) is unconstitutional because it permits the county commissioner member of the Commission to hold more than one office of profit at the same time. Cf. *Day v. Sheriff,* 162 Md. 221, 227, 159 Atl. 602 (1932).

In reaching this conclusion, we have not overlooked the argument of the Commission—based on the holding in *School Commissioners v. Goldsborough,* 90 Md. 193, 44 Atl. 1055 (1899)—that the members of the Commission are not public officers because they corporately exercise the sovereign powers of government entrusted to them as a body corporate rather than in their individual capacities as members of the Commission.

The essential question in *Goldsborough* was whether or not

a member of a board of county school commissioners was a civil officer subject to removal by the Governor under § 15 of Article II of the Constitution. The holding was that a school commissioner was not such an officer. Insofar as the reasoning in that case rested on the premise that a member of a school board is not a civil officer because he could exercise the power of the board only as a member thereof and not as an individual, we think the reasoning should not be extended so as to apply to the meaning of the term "office of profit, created by the Constitution or Laws of this State," as used in Article 35 of the Declaration of Rights, which is the constitutional provision with which we are here concerned. And, insofar as *Clark v. Harford Agricultural and Breeders' Association*, 118 Md. 608, 85 Atl. 503 (1912), followed and applied the reasoning in the *Goldsborough* case, in determining the meaning of "office of profit" as used in Article 35, *supra,* we think *Clark* was wrongly decided, and we decline to follow it.

The correct rule, we think, is that which was applied in such cases as *Sappington v. Slade,* 91 Md. 640, 48 Atl. 64 (1900) and *Riggin v. Lankford,* 134 Md. 146, 105 Atl. 172 (1918), stating that a member of a board of supervisors of election is a civil officer; *Truitt v. Collins,* 122 Md. 526, 89 Atl. 850 (1914), holding that the office of councilman of a municipal corporation is an "office of profit"; and *Nesbitt v. Fallon, supra,* holding that a member of a board of license commissioners occupies a civil or public office. For other cases stating that the holders of certain offices or positions are public officers, see *Calvert County v. Monnett,* 164 Md. 101, 164 Atl. 155 (1933), (county treasurer); *Buchholtz v. Hill, supra,* (clerk to county commissioners); *State* use of *Clark v. Ferling,* 220 Md. 109, 151 A. 2d 137 (1959), (superintendent of reformatory); and *Hetrich v. County Commissioners, supra,* (county business manager).

The prior decisions show that the facts and circumstances in each case, and particularly the nature and effect of the statute involved therein, generally control the determination as to whether the office in question is one of profit. Accordingly, in the case at bar, we think that the circumstances and the relevant statute—which provides that the sanitary districts

thereby created should be under the jurisdiction of a commission of three members and delegated to the members of that commission certain obligatory and discretionary duties to be performed in the exercise of the sovereign power of government thereby conferred on them—clearly indicate that the individual members of the Metropolitan Commission hold an office of profit.

We further hold, as did the lower court, that § 125 (c) is also unconstitutional. Since there is a clear indication in the recent legislative history of the statute that the purpose of re-enacting subsections (a) and (c) of § 125 by Chapter 530 of the Laws of 1961 was to limit the power and authority of the Metropolitan Commission and to give the Board of County Commissioners a measure of control over the actions of the Commission, we think it is apparent that the invalidity of subsection (a) has the effect of rendering subsection (c) incapable of effecting the purpose for which it was enacted; and that the entire amendment must therefore fall. *Heubeck v. City of Baltimore,* 205 Md. 203, 211, 107 A. 2d 99 (1954). See also *Rawlings v. Russell,* 165 Md. 261, 167 Atl. 186 (1933) ; *State v. Rice,* 115 Md. 317, 80 Atl. 1026 (1911). Obviously, if subsection (a) had not increased the membership of the Commission from three to four members, there would have been no reason for subsection (c) to permit the Board to finally determine a proposition which remained unresolved because of a tie vote since there would have been no possibility of a tie vote with all members voting on a three member board.

(ii)

The next question is whether the two members of the Commission employed by the State, or either of them, hold more than one office of profit in violation of Article 35 of the Declaration of Rights. One of them, Roger V. Laynor, is Chief of the Alcoholic Beverages Division in the office of the Comptroller of Treasury. The other, Leroy C. Moser, is Chief of the Right-of-Way Department of the State Roads Commission. Neither of these positions is an office of profit under the decision of this Court in *Gary v. Board of Trustees, supra,* holding that the position of Deputy State Auditor is not a public office. Nor

do the holders of these positions, since there is no evidence of any present or prospective conflict of interest, hold incompatible positions and offices. See *Hetrich v. County Commissioners, supra.*

Neither Laynor nor Moser exercises any portion of the sovereignty of the State in his own right. On the contrary, both serve the State under the direction and control of superiors. We hold therefore that both are mere employees, or at most, subagents, respectively, of the Comptroller of the Treasury and the State Roads Commission. See *State Tax Commission v. Harrington,* 126 Md. 157, 164, 94 Atl. 537 (1915).

### (iii)

The final question is whether the action of the Commission, in approving the three water and sewerage systems and in authorizing the issuance of bonds to finance such systems, was valid. We think it was.

The holding that Chapter 530 of the Laws of 1961 is invalid resulted in reinstating subsections (a) and (c) of § 125 of the county code as originally constituted and giving them such effect as they had prior to the enactment of the invalid amendment. See *Cromwell v. Jackson,* 188 Md. 8, 29, 52 A. 2d 79 (1947) ; *Humphreys v. Walls,* 169 Md. 292, 305, 181 Atl. 735 (1935) ; *Bangs v. Fey,* 159 Md. 548, 556, 152 Atl. 508 (1930) ; *State v. Rice, supra* (p. 329 of 115 Md.). It follows that the action of three members who were qualified to act before the Commission had a fourth member was valid when they approved the construction of the Elkridge and Dorsey water and sewerage systems and the bond issues aggregating $1,500,000 to finance them, and that the action of the three duly qualified members was still valid when (along with the disqualified fourth member) they approved the construction of the Patuxent water and sewerage systems and the bond issue of $1,000,000 to finance it and finally authorized the issuance of bonds aggregating $2,500,000 to finance the three approved projects. So, even though the county commissioner designated by the Board to serve on the Commission was not a lawful member thereof, the three other members were lawfully qualified to act and did. We hold therefore that the action of the Commission was valid.

For the reasons stated herein, the decree of the lower court will be affirmed.

*Decree affirmed; the costs to be paid in equal parts by the Commission and Earl C. Westphal.*