NEIL T. MULRAIN vs. BOARD OF SELECTMEN OF LEICESTER.

Worcester. November 12, 1981. — January 14, 1982.

Present: ARMSTRONG, CUTTER, & KASS, JJ.

*Municipal Corporations*, Police, Ordinances and by-laws. *Police. Public Employment. Statute*, Construction.

In determining the effect on police officers of a town's by-law prescribing residence requirements for municipal employees, the specific provisions of G. L. c. 41, § 99A, as appearing in St. 1978, c. 373, controlled the more general provisions of c. 31, § 58, which were approved shortly afterward during the same legislative session and which appear in St. 1978, c. 393, § 11. [49-52]

A town's by-law prescribing residence requirements for municipal employees and containing various exceptions was not so vague as to be without effect as to the town's police officers. [52-53]

Where a town police officer and his counsel participated in a hearing prior to the officer's dismissal by the selectmen of the town and made no showing of prejudice resulting from the lack of formal notice of the hearing, the officer was taken to have waived objection to the defect in notice. [53]

Where a statute, enacted after the adoption of a town by-law prescribing residence requirements for employees of the town, removed in part a preexisting State preemption of the regulation of the residence of police officers, the by-law could then properly be applied to police officers. [53-54]

CIVIL ACTION commenced in the Superior Court Department on October 17, 1980.

The case was heard by *McCooey*, J., a District Court judge sitting under statutory authority.

*David A. Wojcik* for the plaintiff.

*Andrew C. J. Meagher*, Town Counsel, for the defendant.

CUTTER, J.  On December 13, 1977, Mulrain was appointed a full time police officer in Leicester.  In 1960, the town had adopted a by-law providing in part that "[o]fficials or

employees paid for services to the [t]own, other than competitive contract, emergency or necessary skilled professions, shall be residents of the [t]own and shall so reside." On March 3, 1969, the town accepted the provisions of G. L. c. 31, § 48, as amended by St. 1967, c. 246, § 1, placing its police department under the Civil Service law. Since the recodification of c. 31, by St. 1978, c. 393, many of the provisions of old §§ 48 and 48A, as amended, now appear in new c. 31, §§ 52 to 56 and 58.

Prior to July 1, 1980, Mulrain lived in Leicester. Since then he has lived in North Brookfield, approximately six miles from the nearest border of Leicester. On July 9, 1980, the selectmen of Leicester notified Mulrain that, if he did not within ninety days reestablish residence within the town, he would be removed as a police officer at the end of the period. After a hearing on October 7, 1980, at which Mulrain was present with counsel, Mulrain was removed, effective October 8, 1980. Mulrain seeks declaratory and other relief with respect to this removal. A District Court judge sitting by statutory authority in the Superior Court made amended findings on the basis of a stipulation of essentially the facts already stated and ruled that the 1960 by-law was valid, and that the case was governed by G. L. c. 41, § 99A, as appearing in St. 1978, c. 373, § 1. Mulrain has appealed from the judgment entered in accordance with the judge's ruling.

1. Section 99A, as amended by § 1 of the 1978 statute, reads in part, "Any member of the regular police . . . department of a city or town appointed subsequent to . . . [August 1, 1978] shall reside *within fifteen miles of the limits of said city or town.* Said distance shall be measured from the closest border limits of said city or town in which said member is employed to the closest border limits of the city or town in which said member lives; provided, however, if any said city or town by local ordinance or *by-law to which the provisions of*" G. L. c. 150E, § 7(d), "*shall apply, or by collective bargaining agreement*[1] shall require

---

[1] We interpret the immediately preceding emphasized language of § 99A as saying merely that G. L. c. 150E, § 7(d), shall apply to any such

the members of a regular police . . . department appointed on or after . . . [August 1, 1978] to be *residents of such . . . town*, the provision of such *local* ordinance, *by-law or collective bargaining agreement shall supersede the provision of this section* and provided further such . . . by-law or collective bargaining agreement shall apply only to those members of a regular police . . . department appointed subsequent to the adoption of such local . . . by-law or collective bargaining agreement" (emphasis supplied). Statute 1978, c. 373, § 2, provided that § 1 (just quoted) shall not apply to police officers appointed prior to August 1, 1978, "who reside outside the . . . town" but that § 99A, as stated in § 1, "shall apply to any such . . . [officer] who changes his domicile after" August 1, 1978. Appropriately, this provision might have been included in the General Laws as part of § 99A or as a separate section.

The provisions of G. L. c. 41, § 99A, as amended by St. 1978, c. 373, just quoted, are inconsistent in various respects with the provisions of G. L. c. 31, § 58, as amended by St. 1978, c. 393, § 11 (shortly after the enactment of St. 1978, c. 373).[2] Section 58, so far as quoted in the margin, contains essentially the language of former c. 31, § 48A, as amended by St. 1974, c. 835, § 135. This statute appears to have been intended to make it possible for newly appointed police officers in cities and in towns which had accepted civil service for their police forces to settle in any

---

ordinance or by-law. This provision may duplicate the later provision concerning the effect of collective bargaining agreements, but we perceive no more persuasive meaning to be given to the statutory language.

[2] Section 58 reads in part, "No applicant for examination for original appointment to the police force . . . of a city or town shall be required by rule or otherwise to be a resident of such . . . town at the time of filing application for such examination; provided, however, that *notwithstanding the provisions of any general or special law to the contrary*, any person who receives an appointment to the police force . . . of a . . . town shall *within nine months after his appointment establish his residence within such . . . town or at any other place in the commonwealth that is within ten miles of the perimeter of such . . . town*" (emphasis supplied).

place inside the Commonwealth within ten miles of the perimeter of the town in which they were to serve.

The two 1978 amendatory statutes were approved, c. 373, on July 11, 1978, and c. 393, on July 12, 1978. They must be interpreted in harmony, if that be possible. See *Pilch* v. *Ware*, 8 Mass. App. Ct. 779, 781 (1979). The two most recent cases dealing with residence requirements for police officers arose, and were decided, before the enactment of the 1978 amendments of G. L. c. 31 and of c. 41, § 99A. They are not determinative of the present issue. See *Doris* v. *Police Commr. of Boston*, 374 Mass. 443, 446 (1978); *Burke* v. *Chief of Police of Newton*, 374 Mass. 450, 451 (1978). At most, these decisions recognize that c. 41, § 99A, and former c. 31, § 48A, the predecessor of present § 58, each affects the problem of police officers' residences and are statutes of general application (to more than one city or town) within the reserved powers of the Legislature under the Home Rule Amendment, art. 89 of the Amendments to the Constitution of the Commonwealth. See *Bloom* v. *Worcester*, 363 Mass. 136, 144, 155-160 (1973); *Arlington* v. *Board of Conciliation and Arbitration*, 370 Mass. 769, 773-774 (1976).

Chapter 41, § 99A, as amended, purports to apply to city ordinances as well as town by-laws, and police officers of cities (except certain police chiefs) are subject to civil service. See G. L. c. 31, §§ 48, 51, 52, inserted by St. 1978, c. 393, § 11. Section 99A, as amended, makes no reference to the circumstance that a particular officer is subject to civil service as having bearing upon the impact of the section. Certainly § 99A deals with the subject of residence requirements of ordinances and by-laws specifically whereas c. 31, § 58, does not. On the other hand, § 58 provides (see second emphasized passage in note 2, *supra*) that, "notwithstanding the provisions of any general or special law to the contrary," a person appointed a town police officer shall establish his residence within ten miles of the perimeter of that town.

The language just quoted from new c. 31, § 58, suggests that new § 58 controls the more explicit provisions of c. 41,

§ 99A. Section 58, however, in terms provides only that a newly appointed officer has nine months in which to move to within ten miles of the community where he is employed. The section does not discuss the effect of a town by-law requiring residence within the town or of a subsequent removal of domicil from the town, as do the provisions of amended § 99A and of St. 1978, c. 373, § 2.

During the same session of the Legislature, both new c. 31, § 58 (St. 1978, c. 393), and new c. 41, § 99A (St. 1978, c. 373), were approved within a day of each other. Appropriately, the provisions of the two statutes should have been made wholly consistent. That this was not done may have been due to inadvertence, or it may have been that § 99A was considered the appropriate place to provide for the details of residence requirements for police officers rather than in a general recodification of the statutes governing civil service. The situation, in various respects, is somewhat analogous to that considered in *Marshal House, Inc.* v. *Rent Control Bd. of Brookline*, 358 Mass. 686, 698 (1971), where two statutes dealing with the same subject matter were passed at the same legislative session, and it was held that the statute dealing with that subject matter more specifically (there because of the needs of a particular town) was to be regarded as controlling. We hold that the more specific provisions of new § 99A control the more general provisions of new c. 31, § 58, concerning the effect of town by-laws.

2. We do not regard the Leicester by-law as void for vagueness. A reasonable interpretation of the inartistic and ungrammatical exception to the by-law, "other than competitive, contract, emergency or necessary skilled professions," is that it refers to all persons possibly regarded as employees who are paid by the town (a) under contracts let by competition, or (b) who are retained (probably temporarily) in emergencies, or (c) are members of callings, usually and in common parlance, regarded as professions, e.g. law, medicine, dentistry, accounting, engineering, sciences, and perhaps other occupations ordinarily requiring

postcollege study. We think policemen would not normally be thought of as members of a "skilled profession."

3. Officer Mulrain was given written notice of the cause for his dismissal as early as July 9, 1980. The only matter in issue was the correct interpretation of the statutes already discussed. There is no dispute as to the facts. The officer was represented by counsel who had engaged in correspondence with the town's attorney about the dispute. No request for a hearing was made until September 26, 1980. The officer was present with his counsel at the hearing on October 7, 1980. No showing of any prejudice arising from the lack of formal notice of the hearing has been made. In the circumstances, waiver of objections to the lack of notice reasonably may be inferred. See *Huntoon* v. *Quincy*, 349 Mass. 9, 16-17 (1965). See also *Pitman* v. *Medford*, 312 Mass. 618, 622-623 (1942); *County Personnel Bd.* v. *Third Dist. Court of E. Middlesex*, 369 Mass. 972 (1976); G. L. c. 31, § 42, as amended by St. 1979, c. 196, which requires proof that by a violation of § 41, "the rights of . . . [a civil service employee] have been prejudiced."

4. It is suggested that, when the town accepted G. L. c. 31, § 48, as it then read, the 1960 by-law became a nullity because of its repugnance (a) to former c. 31, § 48A, inserted by St. 1967, c. 857, as amended through St. 1968, c. 746, and (b) to former c. 41, § 99A, at least after its amendment by St. 1971, c. 956, § 1. Section 48A applied in terms only to newly appointed officers and the acceptance of § 48, so far as it involved acceptance of the residence requirements for police officers in § 48A, presumably had no effect on officers fully appointed and qualified before the date of the acceptance. The 1960 by-law, so far as effective at all, governed them until the effective date of St. 1971, c. 956 (amending § 99A) which by its terms applied to all police officers whenever appointed. It became possible, however, to apply the by-law more generally when the present form of c. 41, § 99A, was adopted by St. 1978, c. 373, §§ 1 & 2. The new form of § 99A expressly removed, in part at least, the preexisting State preemption of

legislative regulation of the subject of the residence of police officers. By analogy, the situation is close to cases dealing with the effect of the repeal or elimination of a Federal statutory impediment to applying a State statute previously unenforceable. See *Home Util. Co.* v. *Revere Copper & Brass, Inc.*, 209 Md. 610, 618-619 (1956); *General Elec. Co.* v. *Packard Bamberger & Co.*, 14 N.J. 209, 218-221 (1953). See also *In re Rahrer*, 140 U.S. 545, 564-565 (1891); *Howard County Metropolitan Commn.* v. *Westpahl*, 232 Md. 334, 343 (1963).

*Judgment affirmed.*